SISTERS OF PROVIDENCE IN WASHINGTON, INC., Appellant,

v.

DEPARTMENT OF HEALTH AND SOCIAL SERVICES, State of Alaska, and Lake Otis Clinic, Inc., Appellees.

No. 6156.

Supreme Court of Alaska.

July 30, 1982.

As Amended on Denial of Rehearing Sept. 30, 1982.

Susan W. Mason, Atkinson, Conway, Bell & Gagnon, Anchorage, for appellant.

Parry Grover, Davis, Wright, Todd, Riese & Jones, Anchorage, for appellee Lake Otis Clinic, Inc.

Elizabeth P. Kennedy, Asst. Atty. Gen., Anchorage, Wilson L. Condon, Atty. Gen., Juneau, for appellee State of Alaska.

OPINION

Before BURKE, C. J., RABINOWITZ, CONNOR and MATTHEWS, JJ., and SCHULZ, Judge.*

RABINOWITZ, Justice.

This appeal involves a challenge to the validity of a decision made by the Alaska Department of Health and Social Services.[1] The Department determined that the Lake Otis Hospital project, for which a conditional certificate of need[2] had previously been issued, had been "substantially implemented." As a consequence of this decision, the certificate of need will remain in effect indefinitely, until the project is completed or the certificate is revoked.

---

* Schulz, Superior Court Judge, sitting by assignment made pursuant to article IV, section 16 of the Constitution of Alaska.

1. Sisters of Providence in Washington, Inc. (Providence), which is challenging the Department's decision, is a non-profit corporation which owns and operates Providence Hospital in Anchorage, Alaska. Lake Otis Clinic, Inc. (LOC) is a non-profit corporation which has sponsored the Lake Otis Hospital Project, the subject of the Department's decision. The Department is the state agency responsible for administering the Alaska certificate of need program (AS 18.07.031—.111).

2. In 1974, the United States Congress enacted the National Health Planning and Resources Development Act of 1974, Pub.L.No. 93–641, 88 Stat. 2225 (amended 1979) (current version at 42 U.S.C.A. §§ 300k to 300t–14 (West Supp. 1982)). This act required that the states establish certificate of need programs as a condition for receipt of federal health program funds. 42 U.S.C.A. § 300m–2(a)(4)(B) (West Supp. 1982).

   In 1976, the Alaska legislature responded to the federal act by enacting a state certificate of need program to be administered by the Department. AS 18.07.011—.111. In 1977, the Department promulgated regulations for the certificate of need program. 7 AAC 07.010 —.130 (Reg. 64, Jan. 1978). Although these regulations were substantially amended or repealed, 7 AAC 07.010–.30 (Reg. 75, Oct. 1980), all decisions in this case were made under the old regulations.

   AS 18.07.031 provides that a certificate of need is required before anyone may undertake: (1) the construction of a health care facility; (2) the alteration of bed capacity of a health care facility; (3) the addition or elimination of a category of health care provided by a health care facility. AS 18.07.041 sets out the stan-

---

I. *Background*

From April 19, 1972 to July 1, 1977, the Department issued a series of "construction only" licenses to LOC for a hospital to be built in Anchorage, adjacent to the Lake Otis Medical Center. Construction commenced in 1973 but was stalled at the initial ground preparation and foundation stage, mainly due to difficulties LOC encountered in obtaining long term financing.[3] On July 27, 1977, the Department issued LOC a certificate of need for a "125 bed general hospital in Anchorage, Alaska." By its terms, the certificate would expire in 18 months from the date of issue unless an extension were granted.[4] The Department subsequently granted LOC two six-month

---

dard to be used in determining whether to grant a certificate of need:

> The office shall grant a sponsor a certificate of need or modify a certificate of need if the availability and quality of existing health care resources or the accessibility to those resources is less than the current or projected requirement for health services required to maintain the good health of Alaska citizens.

The legislation established an additional basis (grandfather clause) for issuing a certificate of need:

> All health care facilities in existence or under construction prior to July 1, 1976 shall be issued a certificate of need.

Ch. 275, § 4, SLA 1976 (not codified).

3. Providence alleges that any construction work which LOC performed ceased in mid-1974 and had not resumed by July 1, 1976, the date specified in the "grandfather clause" provision. See the discussion of this provision in note 2.

4. The original notice sent to LOC stated:

> This certificate shall expire 18 months from the date of issue, unless an extension has been granted and shall be subject to revocation by the Department of Health and Social Services for failure to comply with the laws of Alaska or rules and regulations as provided under the Alaska Administrative Code.

   Subsequent to the issuance of the LOC certificate the Department promulgated the regulations implementing the certification process. Under 7 AAC 07.090(d) a certificate expired automatically after 18 months unless (1) the applicant had "substantially implemented" the project or (2) the Department granted an extension. 7 AAC 07.090(g) authorized the Department to grant up to two six-month extensions.

extensions, the second extending the certificate of need from July 1, 1979, to December 31, 1979.

On September 4, 1979, Dr. Michael Beirne, president of LOC, wrote to Department Deputy Commissioner McGinnis suggesting that LOC's activities on the project, i.e., the signing of construction contracts and the initial construction work, would support a finding of "substantial implementation" thereby avoiding the December 31, 1979, expiration date.[5] On December 7, 1979, Beirne again requested a decision on "substantial implementation" and submitted a list of documents in support of this request. On December 31, 1979, the Department issued a conditional decision that the project was substantially implemented.[6] The Department stated that a final decision would be made within 70 days, so that interested parties could be notified and given a chance to submit comments on the decision.

On March 10, 1980, after receiving and reviewing the comments of interested parties including Providence, the Department issued a final determination that the project was substantially implemented. The Department sent letters to Providence and other interested parties informing them of the final decision and of their right to request a hearing under 7 AAC 07.080(b).[7]

Thereafter, Providence submitted a request for a hearing to challenge the "substantial implementation" decision. Providence also filed a notice of appeal and a demand for a trial de novo in the superior court. The Department subsequently filed a motion to dismiss for failure to exhaust administrative remedies and oral argument was set for August 8, 1980. Prior to this hearing the Department notified Providence that its request for an administrative hearing was denied, and filed a supplemental memorandum in support of its motion to dismiss, contending that the proper remedy for Providence was to file an accusation to revoke the LOC certificate under AS 18.07.-081.[8] Judge Mark Rowland denied the Department's motion to dismiss and granted Providence's request for a trial de novo on the validity of the Department's decision.

5. *See supra* note 4.

6. On December 17 and 18, 1979, Deputy Commissioner McGinnis had conferred with two assistant attorneys general regarding the LOC certificate. Three alternatives were considered: (1) the Department could find that the grandfather certificate issued to LOC was not subject to the time limits in the administrative regulations since it was issued prior to the effective date of the regulations; (2) the Department could find as in alternative (1) but also find that the project was substantially implemented; (3) the Department could initiate revocation proceedings and provide LOC with an opportunity to present evidence showing that the project had been substantially implemented.

Although they initially decided to pursue alternative three, Deputy Commissioner McGinnis later sent a letter to the attorneys general in which he expressed grave reservations about the revocation route. He included drafts of two alternative letters, the first of which was similar to the conditional determination letter he eventually sent to LOC.

7. 7 AAC 07.080(b) stated:

A person other than the applicant and the health systems agency who is directly affected by the commissioner's decision may petition him, within 15 days after notification of his decision, for a hearing. The commissioner will, in his discretion, grant the request for hearing if such a petitioner proposes to show

(1) that significant and material evidence was not considered by the commissioner before the decision was rendered;

(2) that significant changes have occurred in either the scope or cost of the proposed activity, or in circumstances related to the application;

(3) that the state agency or commissioner has failed to follow substantially the adopted procedures or criteria for review; or

(4) any other basis which the commissioner determines to be a good cause.

8. AS 18.07.081(a) provides:

The office, a member of the public who is substantially affected by activities authorized by the certificate, or another applicant for a certificate of need may initiate a hearing to obtain modification, suspension or revocation of an existing certificate of need by filing an accusation with the commissioner as prescribed under AS 44.62.360. No revocation, modification, or suspension of an outstanding certificate may be undertaken unless it is in accordance with AS 44.62.330–.630.

Pursuant to court order, Providence then filed an amended complaint joining LOC as an additional defendant. At the conclusion of discovery, LOC moved for summary judgment on the grounds that its grandfathered certificate of need was not subject to any time limits and therefore could not have expired on December 31, 1979, regardless whether it was substantially implemented. Providence subsequently filed two motions for summary judgment, the first charging that the Department's substantial implementation decision was invalid, and the second seeking a declaration that the Department had authority to impose time limits on the certificate of need. It also opposed LOC's motion on the ground that there were disputed issues of material fact regarding the validity of the grandfathered certificate issued to LOC.

On May 5, 1981, the superior court granted summary judgment for LOC, concluding: (1) the LOC certificate of need was properly issued pursuant to the grandfather clause; (2) the LOC certificate was not subject to any time limits; (3) that even if the Department had authority to impose time limits, those limits were lifted by the Department's substantial implementation decision; and (4) Providence did not have the right to seek judicial review of the Department's "substantial implementation" decision. Providence's motion to reconsider was denied, and the superior court subsequently awarded LOC attorney's fees in the amount of $7,500. This appeal followed.

**9.** *See Coghill v. Boucher*, 511 P.2d 1297, 1303 (Alaska 1973); *K & L Distribs., Inc. v. Murkowski*, 486 P.2d 351, 353–54 (Alaska 1971); *United States Smelting, Ref. & Mining Co. v. Local Boundary Comm'n*, 489 P.2d 140, 144 (Alaska 1971).

**10.** *Moore v. State*, 553 P.2d 8, 24 (Alaska 1976) (local commercial fishermen have standing to challenge state sale of offshore gas and oil lease since development may affect their livelihood); *K & L Distribs., Inc. v. Murkowski*, 486 P.2d 351, 353–54 (Alaska 1971) (liquor wholesalers have standing to obtain judicial review of agency decision to grant investment tax credit to prospective brewery operator based

## II. *Does Providence Have The Right to Seek Judicial Review of the Department's Decision?*

The superior court ruled that Providence did not have the right to obtain review of the Department's implementation decision. In regard to this ruling, two issues have been raised by the parties: whether Providence's allegations of injury are sufficient to meet general standing requirements, and whether the Department's decision is subject to judicial review.

■ Standing is a judicial rule of self-restraint necessary to assure "the adversity which is fundamental to judicial proceedings." *Moore v. State*, 553 P.2d 8, 23 (Alaska 1976). In order to establish standing, a party must demonstrate that he has or will suffer some "injury in fact" from the contested action or proceeding. *Wagstaff v. Superior Court*, 535 P.2d 1220, 1225 (Alaska 1975). As stated, however, in *State v. Lewis*, 559 P.2d 630, 634 (Alaska 1977), "this court has liberally construed the judicial limitation of standing and has favored increased accessibility to the courts."[9] We have recognized the right of interested third parties to challenge administrative decisions where the party demonstrates a sufficient personal stake in the outcome of the controversy.[10]

■ Providence alleges it has a personal stake in the Department's decision because: (1) the proposed LOC hospital would be a direct competitor of, and would have a direct economic impact on, Providence; (2) the continued recognition of the LOC certificate inhibits Providence's ability to expand its own facilities;[11] (3) as a competitor

on the potential effect on their economic interests).

**11.** In order to expand Providence would have to obtain a certificate of need. AS 18.07.031. A certificate is granted only if the supply of health facilities is less than projected demand. AS 18.07.041. Providence argues that LOC's 125-bed authorization impedes Providence's ability to expand because Providence does not know if or when these beds will be placed into service and therefore cannot plan accurately, and because LOC's 125 beds may be included as part of the existing supply of health facilities in Anchorage. Deputy Commissioner McGinnis stated that existing certificates of need

subject to the certificate of need statutes and regulations, Providence has a personal interest in the proper administration of these laws.[12]

LOC's first argument is that Providence's allegations of future harm from the hospital project and the outstanding certificate are too speculative. LOC puts forth a series of hypothetical future developments which would eliminate the alleged threat to Providence: (1) the LOC hospital might never be built; (2) the demand for hospitals might increase; (3) the Alaska hospital might be purchased by a native corporation thereby reducing the available beds; or (4) LOC's certificate might be revoked in a currently pending action challenging LOC's certificate.[13] LOC also asserts that Providence's claims are premature since Providence's application for a certificate has not yet been considered or denied by the Department.

LOC's argument that the threat of future injury to Providence is insufficient to create standing is contrary to precedent and logic. Courts have recognized threatened harm as a clear basis for standing. *United States v. Students Challenging Regulatory Agency Procedures*, 412 U.S. 669, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973); *Moore v. State*, 553 P.2d 8 (Alaska 1976). Given the time limits for appeal from administrative decisions, the adverse effects of a certificate of need

approval will almost always be based on future events.[14]

LOC's second argument is that Providence should be denied standing since a separate proceeding to revoke LOC's certificate is currently pending.[15] While the revocation proceeding may ultimately render this case moot, it does not follow that Providence lacks standing. In *K & L Distributors, Inc. v. Murkowski*, 486 P.2d 351, 354 (Alaska 1971), we based our holding regarding standing partially on our conclusion that no one but the plaintiffs were likely to raise the issues involved. Both the revocation proceeding and this action attack the validity of LOC's certificate, so it is arguable that many of Providence's objections will be raised in the revocation hearing. LOC has not, however, disputed Providence's claim that the revocation proceeding will not adjudicate the issue of the procedural and substantive validity of the "substantial implementation" decision.

Based on the foregoing, we conclude that Providence has demonstrated a sufficient personal stake in the outcome of the controversy to assure that the proceedings will be adversarial in nature and therefore that Providence has satisfied the general standing requirements.

This brings us to the second facet of the right to review issue, whether the Department's "substantial implementation"

---

would be considered but would not automatically preclude the issuance of other certificates.

**12.** *Alton R. R. Co. v. United States*, 315 U.S. 15, 19, 62 S.Ct. 432, 435, 86 L.Ed. 586, 593 (1942), held that railroad companies had standing to challenge the issuance of an operating certificate to a motor carrier because the railroads were parties in interest as competitors and members of the same national transport system the licensing statute was designed to coordinate. This economic/competitor relationship distinguishes *Alton* and the present case from *Sierra Club v. Morton*, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972), in which the Court held that mere interest in the enforcement of a law, without allegations of some threat to personal interests, is insufficient to establish standing. *Id.* at 739, 92 S.Ct. at 1368, 31 L.Ed.2d at 646.

**13.** South Central Health Planning & Development, Inc., a local health agency, has instituted

an action pursuant to AS 18.07.081, the text of which is set out in note 8 *supra*, to revoke LOC's certificate of need.

**14.** Providence points out that it comes within the purview of several statutes and regulations which define a "person directly affected" with respect to the certificate of need process. Providence qualifies as an affected person who may seek an administrative hearing on a certificate of need decision. 7 AAC 07.130(6). Providence also comes within the class of people who may seek injunctive relief against violations of the certificate of need provisions. AS 18.07.091(a).

While these provisions do not specifically confer standing, they do illustrate a legislative recognition of Providence's interest in the Department's decisions.

**15.** *See supra* note 13.

decision is subject to judicial review. We hold that the decision is subject to review.

Initially we note that neither the statutes nor the administrative regulations expressly authorize Providence to obtain judicial review of the Department's "substantial implementation" decision.[16] LOC argues that Providence's only remedy is to file an accusation to initiate a proceeding to revoke the LOC certificate. Providence asserts that if a revocation proceeding is its only remedy then the Department's decision is not subject to any judicial review since the revocation proceeding will attack the current validity of the certificate rather than the procedures and criteria employed by the Department in reaching its decision. Providence argues this limitation on judicial review is inconsistent with Alaska's preference for increased accessibility to judicial forums. *Moore v. State*, 553 P.2d at 23.

In *Alyeska Ski Corp. v. Holdsworth*, 426 P.2d 1006, 1011 (Alaska 1967), this court held that the decisions of the Director of the Division of Lands and the Commissioner of Natural Resources in leasing state lands were subject to judicial review despite the absence of any express provision for judicial review. We cited the general rule favoring reviewability stated by Professor Davis:

> The presumption of reviewability controls unless it is rebutted by affirmative indication of legislative intent in favor of unreviewability, or by some special reason for unreviewability growing out of the subject matter or the circumstances.

*Id.* at 1011 n.16, *quoting* 4 K. Davis, *Administrative Law Treatise* § 28.21 (Supp.1965). This court interpreted the statutory provisions which accorded the right to an administrative appeal as evidence of the legislature's concern for adherence to legal procedures in the leasing of state lands. *Id.* at 1011. We concluded that the legislature did not manifest a clear intent that this administrative appeal was to be the exclusive remedy available to the aggrieved party.

In this case, we think the administrative remedies provided by AS 18.07.081[17] (administrative revocation) and AS 18.07.-091(a)[18] (injunctive relief) similarly demonstrate the legislature's concern for adherence to proper procedures in the certification of health facilities and conclude that these remedies were not intended to be exclusive.[19] We conclude that Providence was entitled to seek judicial review of the Department's substantial implementation decision.

---

**16.** A provision of the Alaska Administrative Procedure Act, AS 44.62.560(a) provides in part:

> Judicial review by the superior court of a final administrative order may be had by filing a notice of appeal in accordance with the applicable rules of the court governing appeals in civil matters.

The Department, in its operation of the certificate of need program, is not one of the listed agencies covered by this provision. AS 44.62.-330(a), (b).

**17.** *See supra* note 8.

**18.** AS 18.07.091(a) provides:

> Injunctive relief against violations of [this subchapter] or regulations adopted under [this subchapter] may be obtained from a court of competent jurisdiction at the instance of the commissioner, a holder of a certificate of need who is adversely affected in the exercise of the activities conducted in violation of the certificate, or any member of the public substantially and adversely affected by the violation. Upon written request by the commissioner, the attorney general shall furnish legal services and pursue the action

for injunctive relief to an appropriate conclusion.

**19.** Neither LOC nor the Department has offered any justification for placing the Department's implementation decision beyond judicial review, other than asserting that the revocation proceeding is an exclusive remedy. In this case Providence has raised several challenges to the procedural validity of the Department's decision and to the scope of the Department's authority under the certificate of need statutes. The general presumption of reviewability is even stronger with respect to issues involving the constitutionality, statutory authority, or procedural regularity of agency action than it is with respect to challenges to the merits of agency decisions. K. Davis, Administrative Law Treatise § 28.21 (Supp.1970). Even in the face of a statute which purported to deny review we have held review was available in order to ascertain whether the applicable rules and procedures were observed by the agency in reaching its decision. *K & L Distribs., Inc. v. Murkowski*, 486 P.2d 351, 357 (Alaska 1971).

III. *Did the Superior Court Err in Ruling That LOC's Certificate of Need Is Not Subject to Time Limits?*

A. *Is the Department's Substantial Implementation Decision Invalid Due to its Failure to Adopt Procedural Regulations?*

■ In granting summary judgment the superior court concluded that any time limits which were imposed on LOC's certificate of need were properly lifted when the Department issued its final determination that the hospital project had been substantially implemented.[20] Providence claims that under AS 18.07.101 the Department was required to adopt regulations establishing specific procedures for its "substantial implementation" decision.[21] It argues that the Department's failure to establish specific procedural guidelines rendered the "substantial implementation" decision invalid, citing *United States Smelting, Refining &*

*Mining Co. v. Local Boundary Commission,* 489 P.2d 140 (Alaska 1971), and *Mukluk Freight Lines, Inc. v. Nabors Alaska Drilling, Inc.,* 516 P.2d 408 (Alaska 1973).[22] Providence concludes that the Department's decision was void and without legal effect and that it therefore could not operate to lift the time restrictions on LOC's certificate.

The Department persuasively argues that AS 18.07.101 does not specifically require procedural regulations governing "substantial implementation" decisions and that therefore the mandatory duty relied on in *Mukluk* and *United States Smelting* is not present in this case. The Department further asserts that it had adopted substantive standards for determining when a project is "substantially" implemented and that a formal hearing was not required.[23]

We think that *Mukluk* and *United States Smelting* are distinguishable from this case. In *United States Smelting,* we stressed the

20. Since LOC had already been granted two six-month extensions, *see supra* note 4 and accompanying text, LOC's certificate of need was subject to expiration unless the Department found that the project was substantially implemented.

21. AS 18.07.101 provides:
   *Regulations.* The commissioner shall adopt, in accordance with the Administrative Procedure Act ..., regulations which establish procedures under which sponsors may make applications for certificates of need required by [this subchapter] and which govern the review of those applications by the office, establish requirements for a uniform statewide system of reporting financial and other operating data, and otherwise carry out the purposes of [this subchapter].

22. In *United States Smelting* a property owner challenged the proposed annexation of an area including the owner's property. By statute it was provided that the boundary commission "shall" develop standards and procedures for changing boundary lines. This court held that this imposed a mandatory obligation on the commission, and that in the absence of promulgated standards the agency lacked the power to render a decision. *United States Smelting,* 489 P.2d at 142.
   *Mukluk* involved a challenge by a competitor to a trucking company's application for transfer of an operating license. In considering the application, the transportation commission adopted a modified procedure in which it con-

sidered only written submissions. The statute in *Mukluk* stated:
   The Commission shall adopt regulations, consistent with due process of law which govern practice and procedure and the conduct of all investigations, hearings and proceedings which it holds.
   *Mukluk,* 516 P.2d at 413. We held that the commission was required to adopt rules of procedure prior to the use of the modified proceeding and that the ad hoc application of the modified procedure invalidated the decision.

23. LOC argues that the Department had no authority to impose temporal restrictions on certificates of need and that the time limits set out in the regulations and the terms of LOC's certificate were void. According to LOC its certificate of need was not subject to expiration and could be terminated only by a formal revocation proceeding under AS 18.07.081(a). Both the Department and Providence argue that the Department was authorized to place time conditions on certificates of need.
   In light of our holding that the Department's "substantial implementation" decision was properly rendered we need not reach the question whether the imposition of time restrictions was beyond the scope of the Department's regulatory authority. We affirm the superior court's conclusion that even assuming the Department had the right to impose temporal limits on LOC's certificate of need, those limits were lifted as a result of the substantial implementation decision.

fact that the agency had failed to establish any substantive standards to guide its discretion in changing local boundary lines. In this case, the Department promulgated regulations specifying the criteria which would govern its implementation decisions. 7 AAC 07.090(e), (f). In *Mukluk*, we noted that the agency's failure to adopt procedural regulations and its ad hoc adoption of a modified evaluation procedure deprived the appellant of a fair and adequate opportunity to present evidence or to comment on the proposed agency decision. *Mukluk*, 516 P.2d at 414. Here, Providence and other interested parties were given the chance to submit evidence and comments regarding the Department's consideration of LOC's certificate of need. The Department issued its final determination that the project was substantially implemented after receiving and reviewing the information submitted by Providence and other parties. Providence has not argued that the Department refused to accept or consider this evidence in reaching its final decision.

In light of the foregoing, we hold that the Department's use of this informal notice and comment procedure was reasonable and that the lack of published procedural regulations did not invalidate its substantial implementation decision.

B. *Were the Department's Criteria For Determining Substantial Implementation Invalid?*

7 AAC 07.090(e) and (f) set out the criteria for determining substantial implementa-tion.[24] Providence claims that these criteria are invalid because they set too low a standard. Providence argues that under these criteria a finding of substantial implementation could be obtained based on only token activity, a result inconsistent with the goal of the certificate of need program. According to Providence, the automatic expiration provision of the regulations[25] was intended to encourage continuous progress towards completion of authorized projects and this intent is frustrated by the sections which permit a finding of substantial implementation based on preliminary work, as in this case. The Department acknowledges that 7 AAC 07.090(e) may impose only minimum criteria but asserts that this allows the Department the flexibility it needs to protect the interests of the public as well as of the certificate holders.

■ After reviewing the challenged regulations and the parties' arguments we conclude that Providence has not made a sufficient showing to overcome the presumption of validity of the regulations. *Union Oil Co. of California v. State*, 574 P.2d 1266 (Alaska 1978). Many of Providence's objections go to the Department's application of these criteria rather than to the criteria themselves. In essence, Providence argues that the Department is too lenient in its interpretation of the requirements. Considering the criteria individually, Providence's position becomes even more tenuous. The first three criteria refer to com-

---

24. 7 AAC 07.090(e) and (f) provided:
   (e) Substantial implementation of an approved activity will be considered to have occurred if one or more of the following is accomplished:
   (1) The proposed activity of any kind has been completed;
   (2) equipment for which a certificate of need has been issued has been installed;
   (3) a health facility operating license has been modified to show the requested addition, relocation, or deletion of a number beds;
   (4) a contract has been signed for at least a portion of the actual construction—exclusive of site preparation—for which the certificate of need was granted;

   (5) a sum amounting to at least 20 percent of the total proposal cost has been obligated or expended on the proposed activity; or
   (6) any similar expenditure or obligation has been made toward the proposed activity.
   (f) Acquisition of the site, or investment in other real property does not in itself constitute substantial implementation for the purposes of (e) of this section, but will be considered as one factor upon which the determination will be based.

25. 7 AAC 07.090(d) provided:
   A certificate of need expires automatically 18 months from the date of its issuance unless the applicant has substantially implemented the approved activity or an extension has been granted under (g) of this section.

pleted actions, installations, or modifications. The fourth and fifth criteria require the signing of a contract for a portion of the actual construction, excluding site preparation, or the expenditure or obligation of at least twenty percent of the project cost. The satisfaction of any of these criteria would involve more than mere token activity. The final "catch all" criterion refers to similar expenditures or obligations. While this clause may admittedly be subject to broad interpretation we cannot conclude that it is unreasonable on its face.[26]

IV. *Did the Superior Court Err in Holding That This Litigation Did Not Come Within the Public Interest Exception to Civil Rule 82?*

The superior court awarded attorney's fees against Providence in the amount of $7,500. In so doing, the court rejected Providence's argument that this case came within the public interest litigation exception to Civil Rule 82.[27] When the litigation encompasses issues of public interest, we have recognized that it would be inappropriate to award Civil Rule 82 attorney's fees against an unsuccessful plaintiff who has litigated in good faith. *Gilbert v. State*, 526 P.2d 1131, 1136 (Alaska 1974).[28]

■ Three preliminary factors are considered in making the determination whether a case qualifies as public interest litigation. These factors are: (1) the effectuation of strong public policy; (2) the fact that numerous people would benefit from the litigation; and (3) the fact that only a private party could have been expected to bring the action. *Anchorage v. McCabe*, 568 P.2d 986, 991 (Alaska 1977). In addition, we have alluded to a fourth criterion and described it as follows:

[T]he fourth criterion may be expressed as whether the litigant claiming public interest status would have had sufficient economic incentive to bring the lawsuit even if it involved only narrow issues lacking general public importance. Such

---

**26.** As a separate specification of error Providence asserts that the superior court erred in ruling that the Department had validly issued the original grandfathered certificate of need in July 1977. We have concluded that this issue is not properly before us in this appeal. The central issue in this case has always been the validity of the Department's substantial implementation decision of March 10, 1980. Providence has consistently stated that it seeks judicial review of that decision rather than a collateral attack on the validity of the certificate of need. Providence has not offered any justification for allowing the superior court to review the merits of an administrative action taken over two years prior to this suit.

Under former Appellate Rule 45, Providence would have had 30 days to seek judicial review of the original grant of the certificate. Although the record does not indicate whether Providence received notice of the original grant of the certificate, Providence has not asserted lack of notice or any other reason as an excuse for its failure to file a timely appeal of that decision.

**27.** In its decision the superior court stated:
    Public interest litigation is to be brought by *disinterested citizens* bringing suit to resolve a question of public concern and not to seek to vindicate a purely private interest. This is not a public interest litigation within the meaning of the phrase as it has been used by the Alaska Supreme Court.

(Emphasis added.) In *Kelly Supply Co. v. City of Anchorage*, 516 P.2d 1206 (Alaska 1973) this court refused to apply the public interest exception, finding that the plaintiff was not "a *disinterested citizen* bringing suit to resolve a question of public concern." *Id.* at 1211 (emphasis added). We think the use of the term "disinterested" may have been misleading since public interest cases have often involved "interested" plaintiffs. *Douglas v. Glacier State Tel. Co.*, 615 P.2d 580 (Alaska 1980) (plaintiffs challenging local sales tax on long distance telephone calls, would be relieved from paying tax if suit was successful); *Girves v. Kenai Peninsula Borough*, 536 P.2d 1221 (Alaska 1974) (plaintiff sought damages for Borough's alleged wrongful building of road on her land); *Gilbert v. State*, 526 P.2d 1131 (Alaska 1974) (plaintiff challenged residency requirements for legislative office in order to be able to seek election to state senate). The determinative question is not whether the plaintiff is disinterested but rather whether the plaintiff is motivated primarily by private as opposed to public interests.

**28.** The primary reason for this exception to Civil Rule 82 awards of attorney's fees is that "awarding fees in this type of litigation will deter citizens from litigating questions of public concern for fear of incurring the expense of the other party's attorney's fees." *Gilbert*, 526 P.2d at 1136.

a litigant is less apt than a party lacking this incentive to be deterred from bringing a good faith claim by the prospect of an adverse award of attorney's fees.[29]

■ Our review of the record has persuaded us that the superior court could have concluded that Providence had sufficient private economic reasons to litigate the Department's "substantial implementation" decision.[30] Thus, we affirm the superior court's determination that the case did not come within the public interest exception.[31]

AFFIRMED in part, REVERSED in part, and REMANDED for determination of the substantive validity of the Department's "substantial implementation" decision.

COMPTON, J., not participating.

**29.** *Kenai Lumber Co. v. LeResche,* 646 P.2d 215 Op. No. 2516 (June 11, 1982).

**30.** As previously noted, Providence, in regard to the standing issue, asserted that LOC hospital would be a direct competitor of, and would have a direct economic impact on, Providence and that continued recognition of the LOC certificate inhibits Providence's ability to expand its own facilities.

**31.** The ultimate resolution of any award of attorney's fees and costs awaits completion of the proceedings pursuant to our remand.