**KOYUKUK RIVER TRIBAL TASK FORCE ON MOOSE MANAGEMENT, Appellant,**

v.

**Frank RUE, in his official capacity as Commissioner of Fish and Game, State of Alaska, and the Board of Game, State of Alaska, Appellees.**

No. S–9865.

Supreme Court of Alaska.

Feb. 7, 2003.

Michael J. Walleri, Fairbanks, for Appellant.

Kevin M. Saxby, Assistant Attorney General, Anchorage, Bruce M. Botelho, Attorney General, Juneau, for Appellees.

43. *Era Aviation, Inc. v. Lindfors,* 17 P.3d 40, 47    (Alaska 2000).

Before: FABE, Chief Justice,
MATTHEWS, EASTAUGH, BRYNER, and
CARPENETI, Justices.

*OPINION*

MATTHEWS, Justice.

## I. INTRODUCTION

The Koyukuk River Tribal Task Force on Moose Management appeals the superior court's award of partial costs and attorney's fees to the Commissioner of the Alaska Department of Fish and Game and the Board of Game. Because the Task Force may qualify as a public interest litigant, we remand for a determination of the Task Force's eligibility for public interest litigant status and we therefore vacate the award of costs and attorney's fees.

## II. FACTS AND PROCEEDINGS

The Koyukuk River Tribal Task Force on Moose Management brought suit against the Board of Game, alleging increased moose hunting and declining moose populations in the Koyukuk River drainage. The Task Force accused the Board of violating Alaska statutes and the Alaska Constitution in its management of the moose populations in the area and sought orders requiring the Board to comply with the statutes and the constitution.

The Task Force did not raise its issues before the Board in the form of a regulatory proposal or a petition for rulemaking, but chose instead to bring a civil lawsuit against the Board. The superior court dismissed the case on summary judgment because the Task Force did not exhaust administrative remedies and alternatively because the doctrine of primary jurisdiction required that the case be heard first by the Board of Game. The Board moved for partial costs and attorney's fees, which the Task Force contested on several grounds, including claims that Civil Rules 79 and 82 were inapplicable to the case and that the Task Force was a public interest litigant. The superior court found for the Board on both issues and awarded partial costs and attorney's fees in the amount of $5,045.40. The Task Force appeals the award of costs and attorney's fees, but does not appeal the summary judgment.

## III. STANDARD OF REVIEW

We will overturn an award of attorney's fees if the award is an abuse of discretion or is manifestly unreasonable.[1] "[I]t is an abuse of discretion to award attorneys' fees against a losing party who has in good faith raised a question of genuine public interest before the courts."[2] We review a superior court's decision as to whether or not a party is a public interest litigant for abuse of discretion.[3]

## IV. DISCUSSION

### A. The Task Force's Public Interest Litigant Status

Following summary judgment, the Task Force argued that it was a public interest litigant and the Board challenged this claim. The superior court awarded the Board partial costs and attorney's fees, stating that "[t]he court finds that plaintiff has failed to prove it is a public interest litigant." The Task Force appeals this award, claiming that the superior court abused its discretion in refusing to find that it was a public interest litigant.

To be considered a public interest litigant, a party must generally satisfy the following criteria:

(1) Is the case designed to effectuate strong public policies?

(2) If the plaintiff succeeds will numerous people receive benefits from the lawsuit?

(3) Can only a private party have been expected to bring the suit?

(4) Would the purported public interest litigant have sufficient economic incentive to file suit even if the action involved only

---

1. *Feichtinger v. Conant*, 893 P.2d 1266, 1268 (Alaska 1995).

2. *Gilbert v. State*, 526 P.2d 1131, 1136 (Alaska 1974).

3. *Citizens Coalition for Tort Reform, Inc. v. McAlpine*, 810 P.2d 162, 171 (Alaska 1991).

narrow issues lacking general importance? [4]

A party must satisfy all four criteria in order to qualify as a public interest litigant.[5]

## 1. The case is designed to effectuate strong public policies.

The Task Force contends that its lawsuit was designed to "reduce the harvest pressure on the Koyukuk River Moose population, which all parties admit is an important food resource for subsistence and non-subsistence hunters in Alaska," and sought to enforce state statutes and the state constitution. They claim that "litigation seeking to conserve Alaska's natural resources" serves a public purpose.

We have held that "a suit brought to ensure compliance with statutory and constitutional policies that concern the public as a whole effectuates strong public policies."[6] Subsistence is an area of great public interest in Alaska and in challenging the Board's enforcement of subsistence statutes, the Task Force would appear to be concerned with strong public policies.

## 2. If the plaintiff succeeds numerous people may receive benefits from the lawsuit.

The Task Force contends that "all subsistence users, which State law defines to include both the residents of the Koyukuk River Valley and urban subsistence hunters" would benefit from this litigation. The Board does not contest this claim.

## 3. Only a private party can have been expected to bring suit.

The Task Force contends that because the lawsuit is against the state to enforce compliance with regulations and the constitution, only a private party could reasonably be expected to bring this lawsuit. The Board does not challenge this assertion.

## 4. The purported public interest litigant would not have sufficient economic incentive to file suit even if the action involved only narrow issues lacking general importance.

The Task Force contends that the relief it requested sought to limit or eliminate non-subsistence use of moose in the area. We have said that subsistence use does not create a sufficient economic incentive to sue such that it would negate public interest status.[7] The Task Force did not request damages, and economic incentives do not appear to have driven the litigation.

Although it appears from the record that the Task Force complies with the criteria for public interest litigant status, it is impossible to confirm this appearance without proof to substantiate the Task Force's apparent compliance. As the state correctly points out, without proof of the Task Force's identity and purpose, there is no way to confirm that its individual members would have no economic interest in suing in their own right. Similarly, absent such evidence it cannot be determined with confidence that the Task Force brought its action in good faith to effectuate strong public policies.[8]

---

**4.** *Anchorage Daily News v. Anchorage Sch. Dist.,* 803 P.2d 402, 404 (Alaska 1990).

**5.** *Id.*

**6.** *Gwich'in Steering Comm. v. State, Office of the Governor,* 10 P.3d 572, 585 (Alaska 2000).

**7.** *Alaska Survival v. State, Dep't of Natural Res.,* 723 P.2d 1281, 1292 (Alaska 1986) ("[Reliance] on [state] resources for personal rather than commercial purposes ... is not the type of substantial economic interest sufficient to bar a litigant from qualifying as a public interest plaintiff."). *See also Gwich'in,* 10 P.3d at 585 (finding that a subsistence interest in caribou is insufficient to defeat public interest status); *Eyak Traditional Elders Council v. Sherstone, Inc.,* 904 P.2d 420, 426 (Alaska 1995) ("[W]e [have] held

that a group partially motivated by a threat to its subsistence lifestyle did not have sufficient economic incentive to sue.").

**8.** As an alternative ground for affirming the superior court's denial of public interest litigant status, the state argues that "it is clear from the record that the lawsuit lacked a good faith basis and so was not brought in the public interest. Ergo, the case was not 'designed to effectuate strong public policies.'" But the state did not ask the superior court to make an affirmative finding that the Task Force filed its action in bad faith or argue bad faith as an independent ground for denying public interest litigant status; it simply argued that the Task Force had failed to prove that it pursued a good faith claim designed to effectuate strong public policies. Because the

■ Thus, the question remaining is the exact identity of the Task Force. In its complaint, the Task Force described itself and its purpose as follows:

The Koyukuk River Tribal Task Force on Moose Management is a coalition of village councils for the villages of Allakaket, Alatna, Evansville, Hughes, Huslia, Wiseman, and Koyukuk, which are located along the Koyukuk River in the Interior of Alaska. The Task Force's purpose is to protect the local subsistence use of the moose population in the Koyukuk drainage, cooperate with the ADF & G in development of a Koyukuk River Moose Management Plan, and negotiate cooperative agreements on behalf of the member tribes with the ADF & G, the Alaska State Troopers, and USF & WS for the enforcement and other management actions necessary to protect the moose population of the area.

Similarly, in its decision on the merits the superior court found that "The Koyukuk River Tribal Task Force on Moose Management is a coalition of the village councils for Allakaket, Alatna, Evansville, Hughes, Huslia, Wiseman, and Koyukuk."

But no affidavit was submitted by the Task Force describing its membership. This is understandable since the court in its decision on the merits had seemingly accepted the membership description set out in the complaint when the Task Force filed its opposition to the Board's motion for attorney's fees. We therefore believe that it is appropriate to remand this case for a determination of the Task Force's identity. On remand, the court may call for affidavits or other evidence of the Task Force's membership. If this is contested, the court may hold an evidentiary hearing.

### B. Attorney's Fees

Following the grant of summary judgment, the Board requested and the superior court granted partial costs and attorney's fees pursuant to Civil Rules 79 and 82. The Task Force argues that the superior court incorrectly treated this case as an administrative

appeal and that Civil Rule 82 does not apply to administrative appeals. The superior court correctly noted, however, that "[t]he plaintiff chose to bring this as a regular civil action, thus Rule 82, not the rule on administrative appeals is applicable." Because we are remanding for a determination of the Task Force's status as a public interest litigant, we vacate the superior court's award of partial costs and attorney's fees. On remand, Civil Rules 79 and 82 will appropriately apply if the Task Force is not found to qualify for public interest litigant status.

## V. CONCLUSION

We REMAND this case for a determination of the Task Force's eligibility as a public interest litigant. We accordingly VACATE the award of costs and attorney's fees.

---

state's alternative ground raises factual issues that the superior court had no occasion to address in its findings, we decline to consider it here.