**Paul N. FUHS; and Alaskans for Medical Choice and Competition, Appellants,**

v.

**Joel GILBERTSON, in his official capacity as Commissioner, Department of Health and Social Services, State of Alaska; and Sisters of Providence in Washington, Corp., Appellees.**

No. S–12258.

Supreme Court of Alaska.

June 13, 2008.

---

Robert J. Gunther, Law Office of Robert J. Gunther, Anchorage, and Mark S. Bledsoe, Law Offices of Mark S. Bledsoe, Anchorage, for Appellants.

Stacie L. Kraly, Assistant Attorney General, and Craig J. Tillery, Acting Attorney General, Juneau, for Appellees State of Alaska and Joel Gilbertson.

Peter J. Maassen, Ingaldson, Maassen & Fitzgerald, P.C., Anchorage, and Peter Gruenstein, Gruenstein & Hickey, Anchorage, for Appellee Providence Alaska Medical Center.

Before: FABE, Chief Justice,
MATTHEWS, EASTAUGH, Justices.

## OPINION

EASTAUGH, Justice.

## I. INTRODUCTION

Providence Alaska Medical Center applied to the Alaska Department of Health and Social Services (DHSS) for a certificate of need (CON) to build an open-bore MRI facility, and then-Commissioner Joel Gilbertson granted the certificate. Paul Fuhs filed an accusation requesting a hearing before DHSS to challenge issuance of the CON. When Gilbertson denied the request based on his conclusion that Fuhs lacked standing under Alaska's CON statute, Fuhs filed two superior court proceedings: an administrative appeal challenging the denial of his request for a hearing, and a civil action seeking an injunction against construction of the facility. The superior court consolidated the cases and dismissed them, determining that Fuhs lacked standing both to challenge the CON administratively and to seek an injunction. It then awarded attorney's fees to both Providence and Gilbertson, rejecting Fuhs's

assertion that he was a public interest litigant. Because Fuhs was not "substantially affected" by the CON and because the public interest litigant exemption from Alaska Civil Rule 82 attorney's fees no longer applies to non-constitutional causes of action, we affirm.

## II. FACTS AND PROCEEDINGS

Alaska's certificate of need (CON) statute requires that entities seeking to construct health care facilities at a cost of $1,000,000 or more obtain a CON from the Alaska Department of Health and Social Services (DHSS).[1] In April 2004 Providence Alaska Medical Center applied to DHSS for a CON to construct an open-bore MRI facility. On September 2 Paul Fuhs sent then-Commissioner Joel Gilbertson a letter expressing his concerns with the CON system generally and Providence's CON application specifically. Two weeks later Gilbertson granted the CON to Providence for construction of its open-bore MRI facility. The following week, Fuhs filed an accusation under the Alaska Administrative Procedure Act and requested a hearing before DHSS regarding the CON's issuance.

By letter dated November 25 Gilbertson denied Fuhs's request. Gilbertson concluded that Fuhs lacked standing under the applicable statute, AS 18.07.081(a), which confers standing to initiate a hearing upon a person "substantially affected by activities authorized by the certificate." Gilbertson noted that the applicable regulation, 7 Alaska Administrative Code (AAC) 07.080, grants standing to "any person." But because the regulation expressed a more liberal standard for standing than the statute, Gilbertson determined that the regulation was invalid. Although Gilbertson denied Fuhs's request for a hearing, he noted that he agreed with many of Fuhs's concerns about the CON process and stated that he would implement a moratorium on CON applications "until such time as these regulatory shortcomings can be addressed." The moratorium did not apply to Providence because Gilbertson had already granted its CON.

In December 2004 Fuhs filed two superior court cases: an administrative appeal, 3AN–04–13594 CI, of Gilbertson's decision denying Fuhs standing to challenge the CON and a civil case, 3AN–04–13596 CI, against Gilbertson and Providence seeking declaratory and injunctive relief. Alaskans for Medical Choice and Competition (AMC2), a nonprofit corporation incorporated by Fuhs "to represent the legal and political interest of Alaska's health care consumers," joined Fuhs in the civil case.[2]

In August 2005 the superior court consolidated the two cases. In November the court granted Providence's and Gilbertson's motions to dismiss the civil case. First, the court determined that Fuhs lacked standing to request injunctive relief under AS 18.07.091(a) because he had not shown he would be "substantially and adversely affected" by construction of the open-bore MRI facility. Second, the court determined that Fuhs had standing to challenge Gilbertson's decision that 7 AAC 07.080(b) was invalid, but nonetheless agreed with Gilbertson that the regulation was invalid. Third, the court decided that it could not consider the civil action as an administrative appeal because the administrative appeal had been consolidated with the civil action. Despite dismissing the three causes of action in Fuhs's original civil complaint, the court granted Fuhs's request to submit additional briefing on the administrative appeal component of the case.

In the meantime, Providence had begun constructing the facility; construction began in January 2005 and was completed by the end of July 2005. The facility began serving patients in September 2005.

In March 2006 the superior court dismissed the administrative appeal, concluding that Fuhs did not have standing under AS 18.07.081(a) to maintain an administrative accusation with respect to the Providence CON.

Providence moved for Alaska Civil Rule 82 attorney's fees. The court awarded Provi-

---

1. *See* AS 18.07.031. Beginning July 1, 2005, the threshold cost amount increases annually by $50,000. *See* AS 18.07.035(d). When Providence applied for a CON, the threshold amount was still $1,000,000.

2. We refer to Fuhs and AMC2 collectively as "Fuhs" unless context requires otherwise.

dence $12,897.40, twenty percent of its incurred fees, rejecting Providence's argument that the fees should be adjusted upwards and Fuhs's argument that he should be exempt as a public interest litigant. When Gilbertson moved for Rule 82 fees, the court granted his motion and awarded him $2,261, twenty percent of his incurred fees.

Fuhs appeals the dismissals and the attorney's fees awards. AMC2 appeals the grant of attorney's fees to Gilbertson.

## III. DISCUSSION

### A. Standard of Review

 We review issues of standing using our independent judgment.[3] We review decisions regarding motions to dismiss de novo, deeming all facts in the complaint true and provable.[4] We review decisions regarding public interest litigant status under Rule 82 for abuse of discretion.[5]

### B. Whether Fuhs Has Standing To Administratively Challenge the Providence CON Under AS 18.07.081(a) or Request Injunctive Relief Under AS 18.07.091(a)

Alaska Statute 18.07.081(a) permits a person who is "substantially affected" by the activities authorized by a CON to initiate a hearing by filing an accusation with DHSS.[6] Alaska Statute 18.07.091(a) allows a person "substantially and adversely affected" to file suit for injunctive relief.[7]

When Fuhs initially challenged the Providence CON under AS 18.07.081(a), the pertinent regulation granted standing to any person requesting a hearing "if good cause [were] demonstrated."[8] In his civil complaint Fuhs sought a judgment declaring that the regulation was valid and that it granted Fuhs standing under AS 18.07.081(a). But DHSS argued that the regulation was invalid because it was inconsistent with the "substantially affected" language of the statute.[9] The superior court likewise held that 7 AAC 07.080(b)'s standing requirement conflicted with AS 18.07.081(a)'s requirement that a person be "substantially affected" to challenge a CON. The superior court concluded that the regulation was invalid and that Fuhs therefore could not claim standing under the regulation.

After hearing oral argument, we asked the parties to submit supplemental briefs on the issue of standing. We specifically asked the parties to address whether "the more liberal standing requirement in the regulation vio-

---

3. *Shook v. Alyeska Pipeline Serv. Co.*, 51 P.3d 935, 937 (Alaska 2002).

4. *Catholic Bishop of N. Alaska v. Does 1–6*, 141 P.3d 719, 722 (Alaska 2006).

5. *Fairbanks N. Star Borough v. Interior Cabaret, Hotel, Rest. & Retailers Ass'n*, 137 P.3d 289, 291 (Alaska 2006).

6. AS 18.07.081(a) provides in pertinent part:

 [A] member of the public who is *substantially affected* by activities authorized by the ... certificate of need *may* initiate a hearing to obtain modification, suspension, or revocation of an existing certificate of need by filing an accusation with the commissioner as prescribed under AS 44.62.360.
 (Emphasis added.)

7. AS 18.07.091(a) provides in pertinent part:

 Injunctive relief against violations of this chapter or regulations adopted under this chapter *may* be obtained from a court of competent jurisdiction at the instance of ... any member

of the public *substantially and adversely affected* by the violation.
(Emphasis added.)

8. Former 7 AAC 07.080(b) (2004) provided that:

 Any person other than the applicant who is dissatisfied with a decision of the commissioner to grant, deny, or modify a certificate of need may request a hearing by making a written request which is received by the commissioner.... The commissioner will grant the request for a hearing if good cause is demonstrated.

9. DHSS amended the regulation in August 2005. The current DHSS regulation provides:

 An applicant or a person substantially affected by activities authorized by a certificate of need, who is dissatisfied with a decision of the department to require a certificate of need or a decision of the commissioner to grant, deny, or modify a certificate of need, is entitled to a hearing if the request for a hearing is made in writing and received by the department no later than 30 days after the applicant receives the decision.

late[s] the statute [AS 18.07.081(a)], given that the statute does not, at least explicitly, apply to hearings concerning a decision to grant a certificate of need." Fuhs did not address the question in his supplemental brief and instead argued that: (1) he does not claim standing under the regulation; (2) the statute, like the regulation, applies to decisions to grant a CON; and (3) the issue is moot because Fuhs does not appeal the superior court's invalidation of the regulation. Fuhs has therefore waived any argument he may have had under the regulation, and we look only to the CON statutes to determine whether Fuhs has standing to challenge the Providence CON under either AS 18.07.081 or .091.

■ Fuhs argues that he is "substantially affected" by the issuance of the Providence CON and therefore has standing under AS 18.07.081(a) to administratively challenge the CON. He further argues that he is "substantially and adversely affected" and therefore has standing to request injunctive relief under AS 18.07.091(a).

In his administrative "accusation" Fuhs asserted that he has standing because he is "a citizen of the State of Alaska and a self-paying consumer of medical services within the State." In his civil complaint Fuhs added that he is a retired Alaska state employee. He asserted that his retirement is threatened by the rising costs of medical care and that as a self-pay patient he must pay higher prices to subsidize hospital services that he does not use.

In response, Providence argues that the legislature purposely limited standing in the context of challenges to CONs. Citing the superior court order, Providence points out that Fuhs "did not 'even allege that he has, or ever intends to receive MRI services, either open or closed bore.'" In addition to arguing that Fuhs cannot have standing merely as a consumer of medical services, Providence also argues that Fuhs has failed

to produce any evidence showing that the Providence CON will actually harm consumers. Gilbertson adds that if the legislature had intended for all members of the public to have standing to challenge the issuance of a CON, it would not have included a heightened test for standing in the statute.

We have previously addressed standing to challenge CONs in two decisions.[10] In *South Central Health Planning & Development, Inc. v. Commissioner of the Department of Administration,* we considered whether South Central had standing under AS 18.07.091(a) to challenge the construction of a skilled nursing addition to the Anchorage Pioneers' Home.[11] Determining that South Central was a health systems agency under 42 U.S.C. § 3001, we held that it had standing, in part because Alaska regulations included health systems agencies in the definition of "person directly affected" by the approval or denial of a CON.[12]

But *South Central* does not support Fuhs's argument. Fuhs argues that, like South Central, he fits the regulatory definition of a "person directly affected." When *South Central* was issued, and when Fuhs filed his civil case below, the regulatory definition of "person directly affected" included "members of the public to be served by the activity for which a certificate of need is required."[13] But this definition is of a term that is not found in either statute. There is no reason to think the department intended the definition to define standing under either of the pertinent statutes. Furthermore, the subsection of the regulation on which Fuhs relies is on its face inconsistent with both statutory subsections. The regulation seems to contemplate a very low threshold that does not require anything more than being in the class of people who might be served by the activity; indeed, it even implies that a person benignly impacted would have standing.

7 AAC 07.080(a) (am. 8/14/2005).

10. *See Sisters of Providence in Wash., Inc. v. Dep't of Health & Soc. Servs.,* 648 P.2d 970 (Alaska 1982); *S. Cent. Health Planning & Dev., Inc. v. Comm'r of Dep't of Admin.,* 628 P.2d 551 (Alaska 1981).

11. *S. Cent. Health Planning & Dev., Inc. v. Comm'r of Dep't of Admin.,* 628 P.2d 551, 552 (Alaska 1981).

12. *Id.*

13. Former 7 AAC 07.130(11)(C) (2004).

In *South Central,* we noted that South Central was a "person directly affected" but we further determined that "South Central would also be substantially and adversely affected if health care facilities were constructed in its area without conforming to its plan, for this could disrupt the plan, undercut the agency's statutorily delegated planning activities, and subvert the purposes of health systems planning." [14] Because it appeared South Central would be "substantially and adversely affected," we concluded that it had standing under AS 18.07.091(a). [15]

Fuhs's brief seems to imply that because there are no longer health systems planning agencies, private citizens must monitor the issuance of CONs. He avers that the issuance of CONs at a time Alaska does not have a current health plan "subvert[s] the purpose of health system planning." Assuming for sake of discussion Fuhs is correct that issuing CONs without a plan is antithetical to the purpose of health system planning, this circumstance would be irrelevant to whether Fuhs has standing to raise the issue. Neither the holding of *South Central* nor any of its language supports a reading of AS 18.07.091(a) that would grant Fuhs standing.

■ In *Sisters of Providence in Washington, Inc. v. Department of Health & Social Services,* we held that Providence had standing to challenge a DHSS decision regarding a competing hospital. [16] But *Sisters of Providence* involved a determination of standing

under general standing requirements, rather than the heightened requirements of AS 18.07.081(a) and .091(a). [17] General standing requirements are liberally construed in Alaska; a litigant must merely show "a sufficient personal stake in the outcome of the controversy." [18] Under this liberal test, we held that Providence had standing because it demonstrated a threat of future economic harm if DHSS's decision were upheld. [19]

Because AS 18.07.081(a) and .091(a) are permissive statutes that expressly grant standing and only impliedly deny it, they do not necessarily foreclose the possibility that Fuhs has standing under general standing requirements. But Fuhs cannot satisfy even the generalized test for standing. Unlike Providence in *Sisters of Providence,* Fuhs does not claim he is a direct competitor of the permitted facility, nor has he shown any other individual direct injury.

Furthermore, the plain words of AS 18.07.081(a) and .091(a) do not confer standing upon Fuhs. "Substantially affected" is a stricter test than "sufficient personal stake." When Fuhs initially challenged the CON, the statute and applicable regulations did not define "substantially affected." [20] We therefore give the term its ordinary meaning. [21] "Substantially affected" is not defined, but "substantial" is variously defined as "real," "strong," "considerable," and "important." [22] The parties assume that the "substantially and adversely affected" requirement in AS

---

**14.** *S. Cent. Health Planning & Dev., Inc.,* 628 P.2d at 552.

**15.** *Id.*

**16.** *Sisters of Providence in Wash., Inc. v. Dep't of Health & Soc. Servs.,* 648 P.2d 970, 974–75 (Alaska 1982).

**17.** *Id.* at 974.

**18.** *Id.*

**19.** *Id.* at 974–75.

**20.** The current DHSS regulation defines "person substantially affected" as:

 (A) the department;
 (B) the commissioner;
 (C) a health care facility or provider that

(i) is located in the proposed service area and that provides services similar to the proposed activity, or alternatives to the proposed activity; or
(ii) has indicated to the department, by submitting a letter of intent in response to a public notice issued under 7 AAC 07.042, or a competing application under 7 AAC 07.040, an intent to engage in the activity for which the certificate of need is sought; and
(D) an agency that sets or regulates the rates charged by a health care facility or the services provided by a health care facility[.]
7 AAC 07.900(15) (2006).

**21.** AS 01.10.040(a) ("Words and phrases shall be construed according to the rules of grammar and according to their common and approved usage.").

**22.** WEBSTER'S II NEW WORLD COLLEGE DICTIONARY at 1099 (1995).

18.07.091(a) is stricter than the "substantially affected" requirement in AS 18.07.081(a). For sake of discussion here, we assume without deciding that standing under AS 18.07.091(a) is no less rigorous than under AS 18.07.081(a).[23]

As the superior court noted, Fuhs does not allege that he plans to get an MRI scan. At most, Fuhs has alleged an indirect connection between his health care costs and the issuance of CONs. This connection is too tenuous to give Fuhs standing under either AS 18.07.081(a) or .091(a). Fuhs also refers to the fact that he used to direct the South Central Health Planning Agency and sit on the board of Alaska's Statewide Health Coordinating Council. Although his former positions might make Fuhs substantially interested in the issuance of CONs, they do not cause him to be substantially affected by the activities authorized by the Providence CON. We therefore hold that Fuhs lacks standing to challenge the Providence CON under either AS 18.07.081(a) or .091(a).[24]

### C. Whether Fuhs Is Exempt from Rule 82 Attorney's Fees Awards

Fuhs argues that he is a public interest litigant and that the superior court therefore erred in awarding Alaska Civil Rule 82 attorney's fees to Providence and Gilbertson against Fuhs.[25] In *Matanuska Electric Ass'n v. Rewire the Board,* we explained that a party is a public interest litigant if: "(1) the case was designed to effectuate strong public policies; (2) numerous people would benefit if the litigant succeeded; (3) only a private party could be expected to bring the suit; and (4) the litigant lacked sufficient economic incentive to bring suit." [26]

In 2003 the legislature amended AS 09.60.010 to abolish the public interest exception to Rule 82 for non-constitutional causes of action.[27] The superior court, noting that the amendment had been held unconstitutional by two superior court judges, declined to rely on the amendment in denying Fuhs public interest status. It instead conducted the traditional public interest inquiry and held that Fuhs was not a public interest litigant.

After we heard oral argument in this case, we upheld the constitutionality of the 2003 amendment to AS 09.60.010 in *State v. Native Village of Nunapitchuk.*[28] We then invited the parties in this case to submit supplemental briefs addressing whether, assuming Fuhs is a public interest litigant, the 2003 amendment has any application to this case.

■ All parties agree that the 2003 amendment applies and bars the public interest litigant exception for non-constitutional causes of action. Fuhs now argues that although the 2003 amendment abolished the public interest exception, our decision in *Nunapitchuk* retains the superior court's power to vary a Rule 82(b) fee award when "a given fee award may be so onerous to the non-prevailing party that it would deter similarly situated litigants from the voluntary use of

---

**23.** *See Mech. Contractors of Alaska, Inc. v. State, Dep't of Pub. Safety,* 91 P.3d 240, 248 (Alaska 2004) ("When we engage in statutory construction we will presume that the legislature intended every word, sentence, or provision of a statute to have some purpose, force, and effect, and that no words or provisions are superfluous.").

**24.** Providence additionally argues that we can affirm dismissal of Fuhs's complaint on the alternative grounds of mootness or laches because the Providence open-bore MRI facility has been operating since September 2005. Because we affirm the dismissal on the ground that Fuhs lacks standing, we do not need to address Providence's alternative argument.

**25.** *See Fairbanks N. Star Borough v. Interior Cabaret, Hotel, Rest. & Retailers Ass'n,* 137 P.3d 289, 291 n. 2 (Alaska 2006) (" '[I]t is an abuse of discretion to award attorneys' fees against a los-

ing party who has in good faith raised a question of genuine public interest before the courts.' ") (citing *Koyukuk River Tribal Task Force on Moose Mgmt. v. Rue,* 63 P.3d 1019, 1020 (Alaska 2003)).

**26.** *Matanuska Elec. Ass'n v. Rewire the Bd.,* 36 P.3d 685, 696 (Alaska 2001).

**27.** *See* ch. 86, § 2(b), SLA 2003. The amendment mandates that "a court in this state may not discriminate in the award of attorney fees and costs to or against a party in a civil action or appeal based on the nature of the policy or interest advocated by the party." AS 09.60.010(b).

**28.** *State v. Native Vill. of Nunapitchuk,* 156 P.3d 389, 405–06 (Alaska 2007).

the courts."[29] But when Providence moved for an award of fees, Fuhs only opposed an award on grounds of his alleged public interest litigant status; he did not argue alternatively, or on reconsideration after the superior court ruled against him, that he was shielded by Rule 82(b)(3)(I) from an award of fees. He made no showing how any award would chill suits by similarly situated litigants. On the other hand, his superior court affidavit asserted that he is president of AMC2, which "has an independent board of directors and currently has about 60 members, including consumers, doctors and other medical providers, and small businesses. We have received funding from a variety of businesses including [Alaska Open Imaging Center], who is not a member." Although the affidavit asserts that no member of AMC2 "would reap substantial economic benefit" if Fuhs had prevailed, it also permits no inference that the prospect of an award of partial attorney's fees would discourage similarly situated potential litigants from filing suit. Accordingly, Fuhs's failure to raise this argument in the superior court forecloses him from raising it here.[30]

Fuhs additionally appeals the award of attorney's fees to Gilbertson on the ground the superior court did not adequately explain the basis for its decision. But the court order awarding Providence attorney's fees rejected Fuhs's argument that he is a public interest litigant; the court was not required to reiterate its ruling with regards to Gilbertson. We therefore find no reason to remand for a reconsideration of attorney's fees and accordingly affirm the superior court's awards of attorney's fees to Providence and Gilbertson.

## IV. CONCLUSION

Because he was not "substantially affected" by the Providence CON, Fuhs does not have standing to challenge the issuance of the CON under AS 18.07.081(a) or .091(a). And because Fuhs waived his argument that he should be shielded from attorney's fees awards under Rule 82(b)(3)(I), the superior court did not err in awarding attorney's fees to Providence and Gilbertson. We therefore AFFIRM the dismissals of both of Fuhs's superior court cases and AFFIRM both attorney's fees awards.

BRYNER and CARPENETI, Justices, not participating.

---

29. *Id.* at 406; *see* Alaska R. Civ. P. 82(b)(3)(I) ("[T]he extent to which a given fee award may be so onerous to the non-prevailing party that it would deter similarly situated litigants from the voluntary use of the courts.").

30. *Brandon v. Corr. Corp. of Am.*, 28 P.3d 269, 280 (Alaska 2001) (arguments first raised on appeal are waived). Because we determine that Fuhs waived his Rule 82(b)(3)(I) argument and that Fuhs's status as a public interest litigant would not affect the attorney's fee award, we do not need to decide whether Fuhs is a public interest litigant.