SOUTH CENTRAL HEALTH PLANNING
& DEVELOPMENT, INC., a Health Sys-
tems Agency, Appellant,

v.

COMMISSIONER OF the DEPARTMENT
OF ADMINISTRATION, State of Alas-
ka, and the State of Alaska, Appellees.

No. 5633.

Supreme Court of Alaska.

May 15, 1981.

Peter C. Partnow and Ivan Lawner, Hellen & Partnow, Anchorage, for appellant.

Wilson L. Condon, Atty. Gen., Thomas H. Robertson, Asst. Atty. Gen., Juneau, for appellees.

## OPINION

Before RABINOWITZ, C. J., and CONNOR, BURKE, MATTHEWS and COMPTON, JJ.

MATTHEWS, Justice.

South Central Health Planning and Development, Inc. sought to enjoin the construction of a skilled nursing addition to the Anchorage Pioneers' Home on the ground that the Department of Administration had failed to submit the proposed addition to certificate of need review as required by state law. The trial court denied South Central's motion for a preliminary injunction and ultimately dismissed South Central's complaint for lack of standing.

I

■ South Central has standing to maintain this action. Under AS 18.07.091(a), South Central qualifies as a "member of the public substantially and adversely affected." South Central is a health systems agency under 42 U.S.C. § 300*l*–1. A major-ity of its governing body must be consumers of health care who are residents of the health service area and are broadly representative of the public. 42 U.S.C.A. § 300*l*–1(b)(3)(C)(i) (West 1980 Supp.). South Central, as a health systems agency, is defined in the state regulations as a "person directly affected" by either the approval or the denial of a certificate of need. 7 A.A.C. 07.130(11)(F). It is plain that South Central would also be substantially and adversely affected if health care facilities were constructed in its area without conforming to its plan, for this could disrupt the plan, undercut the agency's statutorily delegated planning activities, and subvert the purposes of health systems planning. 42 U.S.C.A. § 300*l*–2 (West 1980 Supp.). *See Alaska Public Defender Agency v. Superior Court,* 584 P.2d 1106, 1108–09 (Alaska 1978); *Memorial Hospital of Southern California v. State Health Planning Council,* 28 Cal.App.3d 167, 104 Cal.Rptr. 492 (1972).

II

■ The skilled nursing facility proposed to be constructed as an addition to the Anchorage Pioneer's Home requires a certificate of need under AS 18.07.031. A skilled nursing facility is a "health care facility." AS 18.07.111(7).[1] AS 18.07 was passed in order to comply with the certificate of need program established by federal law. Federal law defines a skilled nursing facility in a manner which includes such facilities when they are contained in larger institutions such as Pioneer Homes. 42 C.F.R. § 100.102(e)(4) (1979).

State law was meant to be no less comprehensive. No exemptions are expressed in the state statutes which can reasonably be read as exempting skilled nursing facilities when they are contained in Pioneer Homes. Moreover, the reasons for the certificate of need program are implicated when skilled nursing facilities are built in

---

1. AS 18.07.111(7) provides:

   *Definition.* In this chapter,

   .     .     .     .     .

   (7) "health care facility" means a private, municipal, state or federal hospital, psychiatric hospital, tuberculosis hospital, skilled nursing facility, kidney disease treatment center (including freestanding hemodialysis units), intermediate care facility, and ambulatory surgical facility; the term excludes the offices of private physicians or dentists whether in individual or group practice;

Pioneer Homes. If there is a surplus of similar facilities in the area there may be unnecessary duplication of health resources. Further, proper planning may require that such facilities, or a portion of them, should be made available to a broader range of potential patients. *See* 42 U.S.C.A. § 300*l* –2 (West 1980 Supp.).

### III

■ The legislature's passage of Ch. 122, SLA 1978 did not modify the requirement of a certificate of need under AS 18.07.031. Chapter 122 authorized the sale of not more than $25,000,000.00 in general obligation bonds, subject to approval of the voters of the state. Some 32 separate projects throughout the state were to be constructed by appropriation from the proceeds of the bond sale. Each project was either a health facility, a senior citizen center, or a Pioneer Home. Included among the 32 was the facility in question in this case which is described only as "Pioneers' Home Addition, Anchorage." Chapter 122 does not purport to exempt the Anchorage facility, nor any of the other facilities which it mentions, from certificate of need authorizations. Chapter 122 cannot reasonably be read to exempt the Anchorage facility when other facilities which are clearly not exempt are authorized by the same language.

■ A letter of intent of the House Committee on Health and Social Services accompanying its report on a bill which, after several changes, eventually became part of Chapter 122, expresses the view that "nursing portions of Pioneers' Homes are not subject to certificate of need provisions." 1978 House Journal 1485. Taken at face value this letter of intent is the expression of one committee of the legislature as to the meaning of an enactment passed by a prior legislature. As such, it is entitled to only secondary weight. As the United States Supreme Court has stated,

> the views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one.

**2.** *See also State v. City of Haines*, 627 P.2d 1047, 1049 n.6 (Alaska 1981), where we re-

*Waterman Steamship Corp. v. United States*, 381 U.S. 252, 269, 85 S.Ct. 1389, 1398, 14 L.Ed.2d 370, 380 (1960), *quoting United States v. Price*, 361 U.S. 304, 313, 80 S.Ct. 326, 331, 4 L.Ed.2d 334, 340 (1960). *See also Teamsters v. United States*, 431 U.S. 324, 354 n.39, 97 S.Ct. 1843, 1864 n.39, 52 L.Ed.2d 396, 426 n.39 (1977).[2] For the reasons we have expressed in part II above, we disagree with the opinion of the committee.

It is also argued that the letter of intent indicates that the legislature intended to create a partial exception to the certificate of need requirement in enacting Ch. 122 SLA 1978. It is a "fundamental principle of statutory interpretation ... that a statute means what its language reasonably conveys to others...." *North Slope Borough v. Sohio Petroleum Corp.*, 585 P.2d 534, 540 (Alaska 1978). As previously stated, the text of Chapter 122 cannot reasonably be read as implying an exemption of nursing facilities when they are located in Pioneer Homes. If the legislature had intended such an exemption, it should have so provided in the language of the act. As we stated in *North Slope Borough v. Sohio Petroleum Corp.*, 585 P.2d 534, 543 n.11:

> Our constitution imposes certain requirements of formality on legislative action. Article II, § 14 provides that no bill may become law until it has passed three readings in each house on three separate days, no bill may become law without an affirmative vote of a majority of the membership of each house, and the yeas and nays on final passage shall be entered in the journal. One purpose of these requirements is to ensure that the legislature knows what it is passing. Any passed bill is subject to veto by the governor. Article II, § 15 Alaska Constitution. Only bills are approved or vetoed, not the contents of the house and senate journals, or the tape recordings of committee and floor debates. The legislature enacts laws by the passage of bills meeting the foregoing formalities. It may not

viewed the uses of legislative history while interpreting an apparently unambiguous statute.

enact a law or change one by committee report.

Accordingly, the judgment of the superior court is REVERSED and this case is REMANDED for further proceedings.