**Terrance L. MANNING, Appellant,**

v.

**ALASKA RAILROAD CORPORATION,**
**Appellee.**

No. S–5185.

Supreme Court of Alaska.

June 11, 1993.

Rehearing Denied July 9, 1993.

---

Kenneth L. Covell, Law Offices of Kenneth L. Covell, Fairbanks, for appellant.

William F. Mede, Owens & Turner, Anchorage, for appellee.

Before MOORE, C.J., and RABINOWITZ, BURKE, MATTHEWS and COMPTON, JJ.

## OPINION

BURKE, Justice.

Terrance Manning appeals the superior court's denial of his motion for partial sum-

mary judgment and its granting of the Alaska Railroad Corporation's (ARRC) motion for summary judgment. In granting ARRC's motion for summary judgment, the superior court agreed with ARRC that Manning's civil suit was the equivalent of an administrative appeal of ARRC's termination decision and therefore time barred under Appellate Rule 602(a)(2). In denying his motion, the superior court rejected Manning's argument that the Department of Labor's determination that he was entitled to unemployment benefits should have a preclusive effect in his wrongful discharge claim. We reverse the superior court's granting of ARRC's motion for summary judgment and affirm its denial of Manning's motion for partial summary judgment.

## I. *FACTS AND PROCEEDINGS*

Manning worked as a conductor for ARRC. On August 9, 1989, he reported to work at ARRC's Healy railyard at 5:30 a.m. At 5:40 a.m. Manning radioed the dispatcher for a "track warrant," which authorizes a train's movement. Manning had trouble repeating the track warrant back to the dispatcher and asked a brakeman to repeat the warrant for him.

The dispatcher, suspecting that Manning was impaired by drugs or alcohol, ordered Manning and his crew to "tie up" his train and return to their assigned lodging in Healy. At 8:00 a.m., two ARRC supervisors arrived in Healy to evaluate whether Manning was fit for duty. The supervisors found Manning was not under the influence of drugs or alcohol, and they placed him back in service without delay.

Nonetheless, ARRC concluded that Manning was under the influence of alcohol and/or drugs, and thereafter scheduled a formal hearing for August 30. Manning attended this hearing and was represented by a union representative. Manning testified that he was not able to repeat the track warrant because he had a toothache and had taken Motrin, which made him feel "kinda woozy." Despite ARRC rules requiring him to do so, Manning acknowledged that he failed to tell the dispatcher or his supervisor that the medication was affecting his reaction and coordination.

Relying on evidence adduced at the hearing, ARRC's Vice President of Operations, A.T. Polanchek, terminated Manning on September 14, 1989. Pursuant to the operative collective bargaining agreement, Manning's union filed a grievance with ARRC's President, F.G. Turpin. On September 19, 1989, Turpin denied the grievance. Under the collective bargaining agreement, the union could have asked for binding arbitration. However, on September 28 the union notified ARRC that it was closing the case without seeking arbitration.

Shortly after his termination, Manning filed for unemployment benefits with the Alaska Department of Labor (Department). The Department allowed Manning benefits, determining that the "available evidence" did not establish that Manning's actions constituted "willful misconduct." ARRC appealed, and, after evidence was submitted and three hearings were held, a hearing officer affirmed the decision, finding that ARRC had not established misconduct in connection with work pursuant to Alaska Statute 23.20.379. On appeal, the Commissioner of Labor affirmed the hearing officer's decision. On July 2, 1992 the superior court affirmed the Commissioner's decision.

Meanwhile, on June 26, 1991, Manning filed a complaint in superior court against ARRC asserting separate causes of action for wrongful termination, breach of the implied covenant of good faith and fair dealing, breach of contract, and defamation. ARRC moved for summary judgment on all claims, arguing that Manning's complaint was an untimely appeal of an administrative decision. Manning filed a cross-motion for partial summary judgment on the wrongful termination claim based on the collateral estoppel effect of the Department's decision on Manning's unemployment benefits claim. The superior court granted ARRC's motion and denied Manning's motion. Manning appeals both rulings.

## II. DISCUSSION

### A. MANNING'S CIVIL SUIT IN SUPERIOR COURT WAS AN APPEAL OF AN ADMINISTRATIVE AGENCY DECISION.

The threshold issue is what limitations period should apply to the filing of Manning's civil suit. ARRC characterizes its decision to fire Manning as the action of an administrative agency, subject to the 30 day appeal deadline found in Appellate Rule 602(a)(2).[1] Manning counters first by arguing that ARRC's investigatory hearing was not the decision of an administrative agency. Manning also argues that, if his civil suit is the functional equivalent of an administrative appeal, Rule 602(a)(2) should be relaxed because enforcement of the rule would result in injustice. We disagree with Manning's first contention, but agree with the second.

■ As we pointed out in *State v. Lundgren Pacific Const. Co., Inc.*, 603 P.2d 889 (Alaska 1979), an administrative agency is

A governmental authority, other than a court and other than a legislative body, which affects the rights of private parties through either adjudication or rule-making.

*Id.* at 892 (quoting 1 Kenneth C. Davis, *Administrative Law Treatise*, § 1.01 at 1 (1958)). Thus a governmental authority functions as a administrative agency when it formulates general policy or when it applies such policy to particular persons in their individual capacities. *Winegardner v. Greater Anchorage Area Borough*, 534 P.2d 541, 544 (Alaska 1975).

■ ARRC is a governmental authority. Alaska Statute 42.40.010 states that ARRC "is an instrumentality of the State within the Department of Commerce and Economic Development." ARRC therefore functions as an administrative agency when it formulates general rules or applies them to particular persons in their private capacities.

1. Appellate Rule 602(a)(2) provides in part:
   *Appeals from Administrative Agencies.* An appeal may be taken to the superior court from an administrative agency within 30 days from

■ Precisely this happened in the present case. Manning's hearing involved the application of a governmental authority's policy (i.e. ARRC's policy regarding the use of drugs on the job) to a particular person in his private capacity. Therefore Manning's claim should be considered an appeal from an administrative agency, subject to Appellate Rule 602(a)(2).

■ Under Appellate Rule 602(a)(2) Manning's claim would be time barred since he did not file suit in superior court until almost two years after ARRC's President denied his grievance and his union decided not to arbitrate. However, Appellate Rule 521 provides that the Rules of Appellate Procedure, including Rule 602(a)(2), may be "relaxed or dispensed with by the appellate courts where a strict adherence to them will work surprise or injustice." We think the superior court abused its discretion in failing to relax the thirty day appeal deadline found in Appellate Rule 602(a)(2). *See Anderson v. State, Commercial Fisheries Entry Comm.*, 654 P.2d 1320, 1322 (Alaska 1982) (rulings on motions to relax the thirty day time limit of Appellate Rule 602(a)(2) are reviewed for abuse of discretion).

In *Owsichek v. State, Guide Licensing & Control Bd.*, 627 P.2d 616 (Alaska 1981), we were asked to determine whether the thirty day time limit for administrative appeals should apply to a Guide Licensing and Control Board letter which partially denied Owsichek's application for an exclusive use guide permit. The letter "did not indicate it was an order, or that it was the final order of the Board, or that Owsichek had only thirty days within which to appeal from the order." *Id.* at 622. Rather, the letter told Owsichek to call the Board if he had any questions. *Id.* When Owsichek did this, the Board only suggested he call other guides to work out an agreement with them. *Id.* We held that given these facts, enforcement of the thirty day rule would result in surprise and injustice. *Id.* We stated,

the date that the decision appealed from is mailed or otherwise distributed to the appellant.

Where an agency's determination of a case is expressed otherwise than in a formal order, the "finality" of such informal expressions, for purposes of judicial review, depends, it seems, upon what characterization best serves the equities of the case. A letter or other informal expression, if it is apparently intended to stand as a determination of a pending matter, may sometimes be considered a final order if the party seeking the appeal treats it as such. *But if the party receiving such informal advice from an agency does not realize that it is intended as a definitive order, and delays filing an appeal until (after the expiration of the normal period for seeking review) he is later apprised of its intended significance, it is held that the appeal should not be dismissed as being filed too late.*

*Id.* (quoting 2 Frank E. Cooper, *State Administrative Law* 592–93 (1965) (emphasis in original)).

ARRC's "notice" in Manning's case is similar to the notice given in *Owsichek.* After hearing Manning's Step 3 grievance, ARRC's President F.G. Turpin sent a four sentence letter to the Chairman of Manning's union. After a one sentence review of Manning's case, Turpin simply stated "the grievance of [Manning's] termination is denied." Turpin concluded the letter by stating that Manning could "reestablish his employment relationship with the ARRC by successful participation" in a drug rehabilitation program.

Manning was never sent a copy of the letter. There is no record evidence that Manning ever received the letter or a copy of it. Even if he had, Turpin's short statement falls far short of the notice requirement established in *Owsichek.* The letter did not indicate it was an order, or that it was a final order, or that Manning had only thirty days to appeal from it. In fact, by strongly urging Manning to enter ARRC's drug rehabilitation program, Turpin's note implies that the decision was not final. Asking Manning to interpret Turpin's brief note as an agency's final order, subject to the thirty day appeal rule, would result in surprise and injustice.

We choose now to make explicit what we implied in *Owsichek:* For Appellate Rule 602(a)(2) to apply, an agency must clearly indicate that its decision is a final order and that the claimant has thirty days to appeal. Because Turpin's letter failed to note either of these two things, Appellate Rule 602(a)(2)'s thirty day appeal deadline must be relaxed. By refusing to relax the Rule, the superior court abused its discretion, and we reverse.

B. THE COMMISSIONER OF LABOR'S DETERMINATION THAT MANNING WAS ENTITLED TO UNEMPLOYMENT BENEFITS DOES NOT HAVE PRECLUSIVE EFFECT IN MANNING'S WRONGFUL DISCHARGE SUIT.

Manning asks this court to reverse the superior court's denial of his motion for partial summary judgment and to decide that collateral estoppel should apply in this case. Manning argues that ARRC should be barred from litigating the "just cause" question in this wrongful discharge case because of the Department of Labor's determination in his unemployment benefits proceeding that he was "discharged for reasons that do not constitute willful misconduct."

We have already addressed, in dicta, the question of whether a Labor Department determination that an employee was not fired for willful misconduct should act to collaterally estop an employer from claiming the employee was fired for "just cause." In *Luedtke v. Nabors Alaska Drilling, Inc.,* 768 P.2d 1123, 1130 n. 5 (Alaska 1989), we suggested that collateral estoppel should not apply because:

the issue of [the employee's] misconduct is different than the issue of whether [the employer's] discharge of [the employee] was wrongful. The adjudication before the commissioner did not involve the same issues, nor is the commissioner empowered to determine the culpability of [the employer's] conduct. AS 23.20.-340.

We adopt this reasoning as our holding in the present case.

For collateral estoppel to apply, the issues addressed by the Commissioner must be the same as those being litigated in Manning's wrongful discharge suit. *See DeNardo v. State,* 740 P.2d 453, 455 (Alaska 1987). The Commissioner's authority in an unemployment benefits proceeding is limited to determining "whether the claimant is eligible for benefits." *See* AS 23.20.-340(a). The Commissioner is not empowered to determine an employer's culpability. *Luedtke,* 768 P.2d at 1130, n. 5. Rather, the inquiry at the administrative level is whether the employee "was discharged for misconduct connected with the insured worker's work." AS 23.20.379(a)(2). A Department of Labor regulation defines misconduct as

> any willful violation of the standards of behavior which an employer has the right to expect of an employee. An act that constitutes a willful disregard of an employer's interest or recurring negligence which demonstrates wrongful intent is misconduct. Isolated instances of poor judgment, good faith errors, unavoidable accidents, or mere inefficiency resulting from lack of job skills or experience are not misconduct for the purposes of denying benefits under AS 23.20.379.

8 AAC 85.095(d).

In contrast, the collective bargaining agreement governing Manning's employment states ARRC can take disciplinary action against an employee for "just cause." A "just cause" for discharge is

"one which is not for any arbitrary, capricious, or illegal reason and which is one based on facts (1) supported by substantial evidence and (2) reasonably believed by the employer to be true." *Braun v. Alaska Commercial Fishing & Agric. Bank,* 816 P.2d 140, 142 (Alaska 1991) (quoting *Baldwin v. Sisters of Providence in Washington, Inc.,* 112 Wash.2d 127, 769 P.2d 298, 304 (1989)).[2] Notably absent from this definition is a requirement that the employee engage in willful misconduct.

Because the question of whether Manning committed misconduct under Alaska Statute 23.20.379(a)(2) and Title 8 of the Alaska Administrative Code § 85.095 is different from the question of whether ARRC had "just cause" to terminate him, the Commissioner of Labor's determination that Manning did not engage in willful misconduct should not have a preclusive effect in Manning's wrongful discharge case. Thus, we affirm the superior court's denial of Manning's motion for partial summary judgment.

The superior court's granting of ARRC's motion for summary judgment is REVERSED. The superior court's denial of Manning's motion for partial summary judgment is AFFIRMED. The case is REMANDED for further proceedings.

---

**2.** Contrary to Manning's unsubstantiated assertion, *Braun* does, in fact, enunciate the "appropriate standard" for assessing "just cause" discharges. *Braun,* 816 P.2d at 142 (quoting *Baldwin,* 769 P.2d at 304).