MAT–SU VALLEY MEDICAL CENTER, LLC, an Alaska limited liability company, d/b/a Mat–Su Regional Medical Center, Appellant,

v.

ADVANCED PAIN CENTERS OF ALASKA, INC., an Alaskan corporation, d/b/a Advanced Medical Centers of Alaska; State Of Alaska, Department of Health and Social Services, and Karleen Jackson, in her capacity as Commissioner of the Department of Health and Social Services, State of Alaska, Appellees.

No. S–13062.

Supreme Court of Alaska.

Nov. 6, 2009.

John F. Sullivan, Inslee, Best, Doezie & Ryder, P.S., Bellevue, Washington, for Appellant.

Stanley T. Lewis, Birch, Horton, Bittner and Cherot, and Linda A. Webb, Hagans, Ahearn & Webb, Anchorage, for Advanced Pain Centers of Alaska, Inc.

Kelly E. Henriksen, Assistant Attorney General, and Talis J. Colberg, Attorney General, Juneau, for State of Alaska, Department of Health and Social Services and Karleen Jackson.

Before: FABE, Chief Justice,
EASTAUGH, CARPENETI, WINFREE,
and CHRISTEN, Justices.

## OPINION

EASTAUGH, Justice.

### I. INTRODUCTION

After the Alaska Department of Health and Social Services decided no certificate of need (CON) was required for a health care facility proposed by Advanced Pain Centers of Alaska, Inc., Mat–Su Valley Medical Center sued Advanced Pain, the department, and its commissioner. Mat–Su's lawsuit sought to enjoin construction and operation of the facility and also sought a judgment declaring that the state's CON decision was contrary to law and void. The superior court granted summary judgment against Mat–Su. It held that because there was no violation of an existing CON, Mat–Su lacked standing under AS 18.07.091(a) to seek injunctive relief for the alleged violations. It also held that Mat–Su's claim against the state defendants was an untimely administrative appeal. Because Mat–Su did not lack standing under the statute and because an appeal would not have been untimely, we reverse and remand.

## II. FACTS AND PROCEEDINGS

Advanced Pain Centers of Alaska, Inc. is a health care provider specializing in interventional pain management. It wished to convert office space in Wasilla into a single-suite ambulatory surgery center. It therefore wrote the Alaska Department of Health and Social Services (DHSS) in February 2006, asking the department to determine whether a certificate of need (CON) was required for Advanced Pain's proposed project. Advanced Pain's letter stated that the estimated total cost of the project would be $966,035.54.

Alaska Statute 18.07.031 provides that a CON is required whenever the intended cost of constructing a new health care facility is over a certain statutory threshold. For the year between July 1, 2005 and July 1, 2006, that statutory threshold was $1,050,000.[1] Because the estimated total cost of Advanced Pain's project was under the threshold, DHSS Commissioner Karleen Jackson determined that a CON was not required.

DHSS published notice of the commissioner's determination on March 15, 2006. The notice invited "person[s] substantially affected" by the CON determination to request reconsideration. It stated that any request for reconsideration "must be postmarked no later than 4:30 P.M. April 14, 2006 and must be made in accordance with 7 [Alaska Administrative Code] AAC 07.033."

On April 26, 2006, twelve days after the deadline for seeking reconsideration had expired, Mat–Su Valley Medical Center sent the commissioner a letter requesting that she investigate Advanced Pain's project and "make a determination as to whether the requirements of AS 18.07 and the [CON] regulations are applicable." By letter of May 3, Commissioner Jackson denied Mat–Su's request because it had not been postmarked by April 14.

In October 2006 Mat–Su sued Advanced Pain, DHSS, and Commissioner Jackson in her official capacity. Its complaint alleged that Advanced Pain "knowingly misrepresented material facts" in requesting and obtaining its CON determination. Mat–Su sought to enjoin construction and operation of Advanced Pain's Wasilla surgery center under AS 18.07.091 and requested a declaratory judgment that the commissioner's CON determination was contrary to law and therefore void.[2]

DHSS and the commissioner (collectively "the state" or "the state defendants") and Advanced Pain filed motions for summary judgment. The superior court granted the state's motion, reasoning that Mat–Su lost the chance to obtain a judicial ruling reversing the commissioner's CON determination "when timely appeal of the decision was not taken." The court granted Advanced Pain's motion for summary judgment, reasoning that AS 18.07.091(a) permitted Mat–Su to challenge only a violation of an existing CON, not a violation of a CON statute or regulation. Mat–Su unsuccessfully moved for reconsideration.

Mat–Su appeals.

## III. DISCUSSION

### A. Standard of Review

 We review grants of summary judgment de novo, drawing all factual inferences in favor of, and viewing the facts in the light most favorable to, the non-prevailing party.[3] We affirm grants of summary judgment when there are no genuine issues of material fact and the prevailing party was entitled to judgment as a matter of law.[4]

 Questions regarding the interpretation and application of a statute are questions of law to which we apply our independent judgment.[5] When construing the meaning of

---

1. AS 18.07.031(d).

2. Advanced Pain contended in the superior court that it had begun construction on the new facility in "early 2006," and that the facility was completed in September 2006.

3. *Rockstad v. Erikson*, 113 P.3d 1215, 1219 (Alaska 2005) (citing *Ellis v. City of Valdez*, 686 P.2d 700, 702 (Alaska 1984)).

4. *Id.* at 1219 (citing *Witt v. State, Dep't of Corr.*, 75 P.3d 1030, 1033 (Alaska 2003)).

5. *State v. Jeffery*, 170 P.3d 226, 229 (Alaska 2007).

a statute under this standard, we "look to the meaning of the language, the legislative history, and the purpose of the statute and adopt the rule of law that is most persuasive in light of precedent, reason, and policy."[6]

■ We review for abuse of discretion a superior court's decision to strictly enforce the thirty-day deadline for filing an administrative appeal under Alaska Appellate Rule 602(a)(2).[7]

**B. Whether It Was Error To Grant Summary Judgment in Favor of Advanced Pain**

■ Mat–Su argues that it had standing under AS 18.07.091(a) to seek injunctive relief, and that it was therefore error to grant summary judgment to Advanced Pain.

Alaska Statute 18.07.091(a) describes three categories of complainants eligible to obtain injunctive relief for violations of Alaska's CON statutes or regulations. Subsection .091(a) provides, with bracketed numbers inserted to demark the categories:

> [i]njunctive relief against violations of this chapter or regulations adopted under this chapter may be obtained from a court of competent jurisdiction at the instance of [ (1) ] the commissioner, [ (2) ] a holder of a certificate of need who is adversely affected in the exercise of the activities conducted in violation of the certificate, or [ (3) ] any member of the public substantially and adversely affected by the violation.[8]

Thus, the three categories are: (1) the commissioner, (2) CON holders, and (3) "member[s] of the public."[9] The statute prescribes additional requirements for two of the categories. For the second, the statute requires the CON holder to be "adversely affected in the exercise of the activities conducted in violation of the certificate."[10] For the third, the statute requires the member of the public to be "substantially and adversely affected by the violation."[11]

The superior court concluded that Mat–Su did not fall within any of the three categories of persons capable of obtaining injunctive relief under AS 18.07.091(a). It determined that the first category did not apply because Mat–Su was not the commissioner and that the second did not apply because Mat–Su was not alleging the violation of an existing CON. Mat–Su does not challenge those conclusions.[12] The superior court also held that because Mat–Su could not show that it was adversely affected by the violation of a certificate, it did not fall within the third category.

The superior court's conclusion as to the third category turned on the court's interpretation of the text of subsection .091(a). The court read the last word in the third category, "violation," to refer back to the words "violation of the certificate" that end the second category, and not to the words "violations of this chapter or regulations" that open the subsection and precede all three categories.[13]

The court gave two reasons for its reading. First, it concluded that "common sense English usage requires that the statute be interpreted to refer in the last use of the word 'violation' to the immediately precedent 'violation of the certificate,' not to the first use in the phrase 'violations of this chapter or regulations.' "

Second, it relied on "its reading of the rights of certificate holders," given that it saw "no reasonable argument that a member of the public's right to remedy should exceed

---

6. *Enders v. Parker*, 66 P.3d 11, 13–14 (Alaska 2003) (internal citations and quotation marks omitted) (quoting *Fancyboy v. Alaska Vill. Elec. Coop., Inc.*, 984 P.2d 1128, 1132 (Alaska 1999); citing *Guin v. Ha*, 591 P.2d 1281, 1284 n. 6 (Alaska 1979)).

7. *Carlson v. Renkes*, 113 P.3d 638, 641 (Alaska 2005) (citing *Manning v. Alaska R.R. Corp.*, 853 P.2d 1120, 1124 (Alaska 1993)).

8. AS 18.07.091(a).

9. *Id.*

10. *Id.*

11. *Id.*

12. Mat–Su does not contend here that it is eligible to sue as a member of the second category, or that it has standing as an adversely affected CON holder, or that the defendants violated any CON of Mat–Su's.

13. AS 18.07.091(a).

that of an adversely affected certificate holder.''

On these bases, the court granted Advanced Pain's summary judgment motion.

### 1. Whether Mat–Su had standing under AS 18.07.091

Mat–Su argues that, as a direct competitor of Advanced Pain, it has standing to seek injunctive relief under AS 18.07.091(a) for what it calls Advanced Pain's "fraudulent activity." Mat–Su argues that as a "member of the public substantially and adversely affected," it is within the statute's third category of complainants. It contends that it was error to conclude that because Mat–Su was not alleging a violation of an existing CON, it did not have standing to obtain injunctive relief under subsection .091(a). It argues that the superior court's conclusion was contrary to *South Central Health Planning & Development, Inc. v. Commissioner of Department of Administration,*[14] and would "insulate those violators who completely disregard the CON laws."

Although the state concedes that "Mat–Su may have standing to challenge the commissioner's decision or [Advanced Pain's] alleged violations of the CON laws," Advanced Pain disagrees. It argues that the superior court's "common sense and well-reasoned interpretation of AS 18.07.091(a) is consistent with the plain language of the statute." Advanced Pain asserts that the superior court's interpretation is not inconsistent with our holding in *South Central* because the plaintiff in that case was challenging the violation of an existing CON, whereas Advanced Pain had no CON.

We conclude that there are two main reasons why summary judgment should not have been entered against Mat–Su on the standing issue. First, *South Central* is inconsistent with requiring third-category complainants to show that an existing CON was violated. Second, we independently read the statute to contain no such requirement.

We read *South Central* as foreclosing a conclusion that a member of the public cannot obtain injunctive relief unless a CON was violated. A state agency there failed to submit for CON review the proposed construction of an addition to the Anchorage Pioneers' Home.[15] In other words, the case concerned the failure to seek a certificate, not the violation of an existing certificate. We held that South Central, as a "member of the public substantially and adversely affected," had standing under AS 18.07.091(a) to obtain a preliminary injunction.[16] The opinion established that a substantially and adversely affected member of the public may seek injunctive relief under AS 18.07.091(a) if a health care facility fails to obtain a required CON. South Central was within the statute's third category of eligible complainants, even though it did not allege violation of an existing certificate.

Advanced Pain reads *South Central* as involving the equivalent of an existing CON; it refers to our recognition that the facility would be constructed without conforming to South Central's plan, and our statement that this "could disrupt the plan."[17] Advanced Pain refers to the "plan" as "essentially [South Central's] federally-mandated CON." We think Advanced Pain misreads our opinion. As Mat–Su argues in reply, we described the violation claimed by South Central as the state's "fail[ure] to submit the proposed addition to [CON] review as required by state law...."[18]

Our independent review of the statute and the superior court's analysis confirms that *South Central* did not misapply AS 18.07.091(a).

We interpret the statute as allowing substantially and adversely affected members of the public to challenge any violation of Alaska's CON statutes or associated regulations, not just violations of an existing CON. We

**14.** *South Cent. Health Planning & Dev., Inc. v. Comm'r of Dep't of Admin.,* 628 P.2d 551 (Alaska 1981).

**15.** *Id.* at 552.

**16.** *Id.*

**17.** *Id.*

**18.** *Id.*

read the statute to provide that "[i]njunctive relief against *violations of this chapter or regulations adopted under this chapter* may be obtained from a court ... at the instance of ... any member of the public substantially and adversely affected *by the violation.*"[19] Two main reasons—grammar and the effect on enforcement—compel this reading.

First, it is grammatically most correct to link the two nouns, "violations" in the opening clause and "violation" in the last clause, because it permits the three categories to be read independently. The first category is clearly independent, and the word "or" precedes the third category. This implies that each category is independent, and that each can be read and applied without referring to any other. Advanced Pain's reading would effectively make the third category dependent on the second, requiring it to borrow an element from the second, a result that seems grammatically unlikely.

Likewise, one would expect that if the drafters had intended the first and second categories to be independent but the third to depend in some way on the second, they would have more clearly treated the third as related to the second. In that event, one would not expect three ostensibly independent categories. And given the way the subsection is constructed, we assume the drafters would have recognized that if the third category could be rationally read to borrow an element from the second, it would create inherent ambiguity about whether the final "violation" refers to "violations" in the subsection's opening words or to "violation" in the second category. Consequently, if the legislature had intended both the second and third categories to require the violation of a certificate, we would expect the third category to refer more explicitly to a certificate violation, and to parallel more explicitly the second category in construction. At the least, one would have expected the legislature to have added "of the certificate" after "violation" in the third category to unambiguously indicate that both the second and third categories require the violation of an existing CON.

Similarly, if the third category had been intended to carry forward the second category's requirement of "activities conducted in violation of the certificate," ambiguity would have been avoided if the third category used "activity" or "activities," rather than "violation." It is improbable that the legislature would have used an ambiguous, indirect, and ungrammatical shortcut to refer to a restriction explicitly required only for the second category of prospective complainants.

The two clauses' constructional divergence also renders the superior court's reading less plausible. The initial clause of the subsection and the third category directly use "violations" and "violation" as nouns. But the second category uses "violation" only as part of the clause "in the exercise of the activities conducted in violation of the certificate."[20] As used there, "violation" is a "buried verb"[21] that modifies "activities conducted"; translated, the second category really requires "activities violating" the holder's certificate. It is unlikely the legislature used an unadorned noun in the third category to adopt an entire clause in the second category simply by repeating one word that is used as a modifier in the second.

Furthermore, treating the usage of "violation" in the second category as the same as the usage of "violations" and "violation" in the opening words and in the third category would inherently lead to ambiguity. Any such ambiguity is avoided by giving independent effect to each of the categories and reading the statute carefully. The superior court relied on one grammatical tool, proximity, to decide which of the two choices it perceived was correct. We conclude that the subsection's text strongly favors the reading we give the statute.

The second main reason for our reading of the statute derives from the effect Advanced Pain's reading would have on enforcing Alaska's CON laws. At least two different sorts of claims are possible with respect to the

---

19. AS 18.07.091(a) (emphasis added).

20. AS 18.07.091(a).

21. *See* Bryan A. Garner, A Dictionary of Modern Legal Usage 122–23 (2d ed.1995).

CON statutes and regulations: first, claims that someone has acted without obtaining a required CON; and second, claims that someone has violated an existing CON. Limiting third-category complainants to this second sort of claim would mean that the first sort of claim could only be pursued by the commissioner, as the sole first-category complainant. That reading would leave a significant hole in enforcement if the state, contrary to law, erred in failing to require someone to apply for or obtain a CON, because no one other than the commissioner who erred could seek relief under subsection .091(a). That result would effectively render the legislature's chosen enforcement mechanism—injunctive relief—a nullity, as either unavailable or unneeded.[22] We doubt that the legislature intended to limit enforcement of Alaska's CON laws so narrowly or improbably.

The superior court also thought that there was "no reasonable argument that a member of the public's right to remedy should exceed that of an adversely affected certificate holder." The court's reading of the subsection seemed to assume that, like certificate holders, members of the public only had to show that they were "adversely affected." The court therefore concluded that, because a certificate holder could not obtain relief unless a certificate was violated, a member of the public could not, either. The court's underlying assumption appears to be incorrect. Although the statute requires that a certificate holder be "adversely affected," it requires that a member of the public be "substantially and adversely affected."[23] This difference suggests that the statute does not impose identical requirements on the two categories of complainants, undermining one of the two bases for the superior court's reading of the statute.

 The statute neither states nor implies that members of the public may challenge only violations of existing CONs. We see no reasonable basis for inferring such a limitation. Because such a reading would also be contrary to the state's common law precedent on standing,[24] we assume the legislature would have used unambiguous language to adopt such a limitation, if that had been its intention. We are consequently unwilling to read into the subsection a limitation that is neither explicitly nor implicitly stated.

It was therefore error to conclude that a member of the public may only obtain injunctive relief for an alleged violation of an existing CON. Mat–Su may seek injunctive relief for the alleged violation of the statutes and regulations if it is a "member of the public substantially and adversely affected" by the violation.

It appears to be undisputed that Mat–Su is indeed a member of the public. Neither Advanced Pain nor the state argues other-

---

**22.** Injunctive relief would be unavailable because a commissioner unwilling to require a facility to obtain a CON would be unlikely to sue either to enjoin the facility's construction or to compel herself to require the facility to apply for a CON. It would be unneeded because a commissioner willing to require a facility to obtain a CON would require the facility to apply. In that event an injunction would be unneeded unless the facility declined to comply.

**23.** AS 18.07.091(a).

**24.** We broadly interpret the concept of standing to favor increased accessibility to judicial forums. *Moore v. State,* 553 P.2d 8, 23 (Alaska 1976). To establish general interest-injury standing, a plaintiff need only demonstrate that he or she has a "sufficient personal stake in the outcome of the controversy and an interest which is adversely affected by the complained-of conduct." *Keller v. French,* 205 P.3d 299, 304 (Alas-

ka 2009) (internal quotation marks and citations omitted) (quoting *Ruckle v. Anchorage Sch. Dist.,* 85 P.3d 1030, 1040 (Alaska 2004); *Alaskans for a Common Language v. Kritz,* 3 P.3d 906, 915 (Alaska 2000)).

Applying the general standing test, we have held that a hospital had standing to obtain review of a decision by DHSS that a competitor's project had been substantially implemented. *Sisters of Providence in Washington, Inc. v. Dep't of Health & Soc. Servs.,* 648 P.2d 970, 975 (Alaska 1982) (noting that hospital had "demonstrated a sufficient personal stake in the outcome of the controversy to assure that the proceedings will be adversarial in nature"); *see also Fuhs v. Gilbertson,* 186 P.3d 551, 556 (Alaska 2008) (noting that because AS 18.07.091(a) is a "permissive statute[] that expressly grant[s] standing and only impliedly den[ies] it," subsection .091(a) does not "necessarily foreclose the possibility" that litigants may have standing under the general standing requirements).

wise. Nothing in AS 18.07.091(a) implies that the second and third categories of complainants were intended to be mutually exclusive. Neither Advanced Pain nor the state appears to argue that an entity that holds a CON is ineligible to seek relief as a "member of the public." Such a reading would be illogical in this case because it would mean that a would-be competitor who had not yet been issued a CON could obtain injunctive relief under subsection .091(a) even though Mat–Su could not. We therefore assume without deciding that Mat–Su is "a member of the public" even though it may have held its own certificate.

The closer question is whether Mat–Su was indeed "substantially and adversely affected" by Advanced Pain's alleged violation of the CON laws and regulations. The superior court assumed without deciding that Mat–Su, as a competitor of Advanced Pain, would be "adversely" affected by the construction of Advanced Pain's Wasilla facility. Mat–Su argues that it is "substantially and adversely affected" in part because Advanced Pain's project will compete directly with Mat–Su. It also argues that because Advanced Pain's ambulatory surgery center will be included as part of the existing supply of surgery suites in any need analysis for new surgery suites, Advanced Pain's facility will limit Mat–Su's ability to expand.

Advanced Pain contended at oral argument before us that Mat–Su was not substantially and adversely affected. Advanced Pain conceded that its Wasilla facility was in the same service area as Mat–Su's medical facility. But it also argued that its facility had only one procedure room, which was intended to be used only for pain-management procedures in which drugs are injected into the spine, nerve root, or joint to reduce pain. Advanced Pain also appeared to concede at argument that the same kind of pain-management procedures were performed at Mat–Su's facility. And Mat–Su's chief financial officer stated in an affidavit that from 2005 to 2007, Mat–Su performed over 127 pain-related, outpatient procedures, including nerve blocks, trigger point injections, and joint injections.

Based on these facts, we agree with Mat–Su's contention that it would be substantially and adversely affected if Advanced Pain were to open and operate even a single pain-management procedure room in the same service area without complying with the CON laws and regulations. For purposes of determining whether the alleged violation gives Mat–Su standing, we assume that Advanced Pain will be able to perform procedures that might otherwise have been performed at Mat–Su. Mat–Su has arguably invested resources in complying with the CON laws and regulations with the expectation that DHSS would control the market by enforcing those same rules against potential competitors.

We accordingly hold that Mat–Su has standing as a substantially and adversely affected member of the public to seek injunctive relief for Advanced Pain's alleged violations under AS 18.07.091(a).

### 2. Whether Mat–Su's claim against Advanced Pain was untimely

■ Advanced Pain argues that because Mat–Su failed to seek judicial review in a timely manner the superior court was correct to dismiss Mat–Su's claims. Advanced Pain contends that Mat–Su's claim against it for injunctive relief was an administrative appeal because it "necessarily require[d]" the superior court to "second-guess an agency decision." Advanced Pain argues that under both AS 44.62.560(a) and Alaska Appellate Rule 602, Mat–Su had just thirty days following the final agency decision in which to seek judicial review.[25] Because Mat–Su did not file its claim within thirty days of DHSS's final decision, Advanced Pain argues that Mat–Su's claim was untimely.

The superior court did not hold that Mat–Su's claim against Advanced Pain was an untimely appeal of an administrative decision. Advanced Pain appears to argue un-

---

**25.** AS 44.62.560(a) provides that "[j]udicial review by the superior court of a final administrative order may be had by filing a notice of appeal ... within 30 days after the last day on which reconsideration can be ordered." Alaska Appel-
late Rule 602 similarly states that "[a]n appeal may be taken to the superior court from an administrative agency within 30 days from the date that the decision appealed from is mailed or otherwise distributed to the appellant."

timeliness as an alternative basis for affirming the superior court's decision.[26] To affirm on this ground, we would have to conclude both that: (1) Mat–Su's request for injunctive relief was an administrative appeal subject to the thirty-day appeal deadline in AS 44.62.560(a) and Appellate Rule 602, and (2) Mat–Su failed to file its complaint within the thirty-day deadline prescribed for administrative appeals.

We have held that "[a] claim is functionally an administrative appeal if it requires the court to consider the propriety of an agency determination. A review on the record, as distinct from the de novo reception of evidence, is a characteristic of appeals."[27] Mat–Su's claim for injunctive relief against Advanced Pain required only that the superior court consider whether Advanced Pain had violated the CON laws and regulations by omitting costs from its project estimate—a question that would have involved the reception of new evidence—not the propriety of DHSS's CON determination. Therefore, Mat–Su's claim for injunctive relief against Advanced Pain was not an administrative appeal.

█ But even if it had been, that appeal would not have been untimely. Under Appellate Rule 602, the thirty-day period in which an administrative appeal must be filed "does not begin to run until the agency has issued a decision that clearly states that it is a final decision and that the claimant has thirty days to appeal."[28] We have held that "[w]here an administrative agency's decision is communicated in a letter that fails to do either of these things, it is an abuse of discretion not to relax Rule 602(a)(2)'s thirty-day appeal deadline."[29] In such cases, we have held that the thirty-day period for filing an administrative appeal never began to run.[30]

The state appears to argue that DHSS's May 3, 2006 letter denying Mat–Su's request for reconsideration was the "final agency action."[31] But that letter did not clearly state either that it was the final agency decision or that Mat–Su had thirty days to appeal. We accordingly conclude that the thirty-day period for filing an administrative appeal never began to run. Even if it had been an administrative appeal, Mat–Su's claim for injunctive relief would not have been untimely.

### 3. Whether Mat–Su was required to exhaust administrative remedies before suing for injunctive relief under AS 18.07.091(a)

█ As a second alternative basis for affirming, Advanced Pain argues that Mat–Su failed to exhaust available administrative remedies before seeking judicial review. Advanced Pain appears to be renewing an argument it made in the superior court that, because Mat–Su failed to make a timely request for reconsideration by the commissioner, it "allow[ed] its administrative remedies to lapse."

Mat–Su replies that Advanced Pain's interpretation "seek[s] to impose a new condition upon the applicability of AS 18.07.091(a) that simply does not exist in the statute." Mat–Su argues that subsection .091(a) does not condition the right to seek injunctive relief upon first filing an administrative appeal or exhausting administrative remedies. It also contends that it would be "nonsensical" to impose such a prerequisite, because one of

**26.** *See Snyder v. Am. Legion Spenard Post No. 28,* 119 P.3d 996, 1001 (Alaska 2005) ("We may affirm a judgment on any grounds that the record supports, even if not relied on by the superior court." (citing *Marshall v. First Nat'l Bank of Alaska,* 97 P.3d 830, 835 (Alaska 2004); *Ransom v. Haner,* 362 P.2d 282, 285 (Alaska 1961))).

**27.** *Carlson v. Renkes,* 113 P.3d 638, 641 (Alaska 2005) (internal citations and quotation marks omitted) (quoting *Haynes v. State, Commercial Fisheries Entry Comm'n,* 746 P.2d 892, 893 (Alaska 1987); *Dep't of Corr. v. Kraus,* 759 P.2d 539, 540 (Alaska 1988)).

**28.** Alaska R.App. P. 602(a)(2).

**29.** *Carlson,* 113 P.3d at 642 (quoting *Skudrzyk v. Reynolds,* 856 P.2d 462, 463 (Alaska 1993)).

**30.** *Id.*

**31.** Advanced Pain treats Commissioner Jackson's March 15, 2006 letter as the "final administrative decision that a CON was not required for [its] facility."

the parties that may seek relief under the statute is the commissioner.

We have noted that the "basic purpose of the exhaustion doctrine is to allow an administrative agency to perform functions within its special competence—to make a factual record, to apply its expertise, and to correct its own errors so as to moot judicial controversies."[32] The United States Supreme Court has held that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."[33] But the case in which the Court so held involved a lawsuit brought under the Prison Litigation Reform Act of 1995, which explicitly provided that the action could not be brought "until such administrative remedies as are available are exhausted."[34]

Nothing in AS 18.07.091—or in Alaska's CON laws for that matter—explicitly required Mat–Su to exhaust available administrative remedies before suing for injunctive relief in the superior court. Furthermore, as discussed above, Mat-su's claim for injunctive relief against Advanced Pain was not an administrative appeal because the dispute focused far more on the validity of Advanced Pain's cost estimate than on what the commissioner did. A failure to exhaust therefore is not an alternative ground for affirming.

### C. Whether It Was Error To Grant Summary Judgment in Favor of the State Defendants

Mat–Su asked the superior court to declare that the state's CON determination was contrary to the CON statutes and regulations. Mat–Su argued that the state defendants adopted a "laissez faire attitude" and "blindly accepted [Advanced Pain's] representations with no independent analysis or investigation." Mat–Su contended that their "head-in-the-sand-approach" permitted Advanced Pain to violate the CON laws.

Mat–Su appears to renew on appeal the contentions it made below. It argues that "DHSS blindly accepted Advanced Pain's representations with no independent analysis or investigation" and was, as a result, "at least partially complicit in Advanced Pain's deception." Mat–Su contends that even a cursory review of Advanced Pain's CON determination request would have revealed that it was inadequate because it did not contain certified estimates or other supporting information for the claimed project costs. Mat–Su argues that this information was required by 7 AAC 07.031 and that the state defendants might have been able to discover Advanced Pain's "duplicity" if they had properly administered the CON laws and regulations.

The state responds that Mat–Su has either waived or abandoned any claims it may have had against the state defendants. Even if Mat–Su's claim was not abandoned, the state argues that we should affirm the grant of summary judgment because Mat–Su's complaint was an untimely administrative appeal and because the commissioner's consideration of Advanced Pain's request for determination was proper as a matter of law.

The superior court granted summary judgment to the state defendants on the sole ground that "[t]he opportunity to obtain a judicial ruling reversing the commissioner's administrative decision was lost when timely appeal of the decision was not taken." But we noted above that the thirty-day period in which to seek judicial review never began to run against Mat–Su because DHSS did not "clearly state" in its May 3, 2006 letter either that the letter was the final agency decision or that Mat–Su had thirty days to appeal.[35] We therefore hold that it was error to grant summary judgment to the state defendants

**32.** *State, Dep't of Transp. & Pub. Facilities v. Fairbanks N. Star Borough*, 936 P.2d 1259, 1262 (Alaska 1997) (quoting *Ben Lomond, Inc. v. Municipality of Anchorage*, 761 P.2d 119, 121–22 (Alaska 1988)).

**33.** *Woodford v. Ngo*, 548 U.S. 81, 90–91, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006).

**34.** *Id.* at 87–88, 126 S.Ct. 2378 (quoting 42 U.S.C. § 1997e(a) (2000)).

**35.** *See* Alaska R.App. P. 602(a)(2); *see also* Part III.B.2.

on the ground Mat–Su's action was untimely, and remand for further proceedings.[36]

### D. Whether the Attorney's Fees Awards to Advanced Pain and the State Were Manifestly Unreasonable

The superior court awarded the state $3,336.58 in attorney's fees under Alaska Civil Rule 82; it also awarded Advanced Pain $76,899.38 in attorney's fees under Alaska Civil Rule 68. Mat–Su argues that these awards were manifestly unreasonable and an abuse of discretion.

We do not need to reach the merits of Mat–Su's attorney's fees arguments. Because Advanced Pain and the state are no longer prevailing parties, we vacate their fees awards.

## IV. CONCLUSION

For these reasons, we REVERSE the grants of summary judgment in favor of Advanced Pain and the state, and REMAND for further proceedings. Because Advanced Pain and the state are no longer prevailing parties, we VACATE their attorney's fees awards.

---

36. The state argues that we can still affirm the superior court's decision on the alternative ground that the state's CON determination was proper as a matter of law. We decline to so hold.