NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

## THE SUPREME COURT OF THE STATE OF ALASKA

RODNEY RHODES, )
                           ) Supreme Court No. S-18815
           Appellant, )
                           ) Superior Court No. 3AN-23-04358 CI
     v. )
                           ) MEMORANDUM OPINION
STATE OF ALASKA, DEPARTMENT ) AND JUDGMENT*
OF CORRECTIONS, )
                           ) No. 2053 – November 6, 2024
           Appellee. )
                           )

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Adolf V. Zeman, Judge.

Appearances: Rodney R. Rhodes, pro se, Anchorage, Appellant. Andalyn Pace, Assistant Attorney General, and Treg R. Taylor, Attorney General, Juneau, for Appellee.

Before: Maassen, Chief Justice, and Carney, Borghesan, Henderson, and Pate, Justices.

## I. INTRODUCTION

An inmate was cited by correctional officers within the Department of Corrections (DOC) for an infraction and was found guilty of the infraction following a disciplinary hearing. The inmate appealed the disciplinary decision to the prison

---

\* Entered under Alaska Appellate Rule 214.

superintendent, and the appeal was denied. The appeal form included notice of a thirty-day deadline to appeal a denial to the superior court.

Almost one year later the inmate filed suit regarding the disciplinary infraction and other issues in federal court. After that case was dismissed several months later, the inmate filed an administrative appeal of the disciplinary decision in state court. The superior court dismissed the case for untimeliness and failure to state any violations of his constitutional rights.

The inmate appeals. Because we agree that the inmate's claims are time-barred, we affirm the superior court's decision.

## II.    FACTS AND PROCEEDINGS

In May 2021, correctional officers at the Matanuska-Susitna Pretrial Facility (Mat-Su Pretrial) received information from a confidential informant that Rodney Rhodes had threatened to sexually assault a correctional officer. The subsequent investigation led to contact with another informant, who verified the first informant's allegations and said he "genuinely felt concerned" about Rhodes being in the same vicinity as the correctional officer he had threatened to assault.

Rhodes was cited for the low-moderate infraction of making threats of future bodily harm,[1] and received notice of a disciplinary hearing planned for two weeks later. The notice instructed Rhodes that he "must inform the Disciplinary Committee/Hearing Officer in writing, at least 24 hours before the hearing," of any witnesses or evidence he wanted to include at the hearing. Rhodes's hearing advisor subsequently submitted a form, signed by Rhodes, indicating that Rhodes did not request any witnesses or evidence to be admitted at the hearing.

DOC held the scheduled disciplinary hearing. At the hearing, Rhodes denied the allegations brought forward by the confidential informants. He contended

---

[1]    *See* 22 Alaska Administrative Code (AAC) 05.400(d)(6).

that the informants were inmates he had had conflicts with in the past, and that they were retaliating against him after he had complained about them to Mat-Su Pretrial staff. Rhodes also stated during the hearing that he "should have called witnesses." The hearing officer determined that Rhodes was guilty of the alleged infraction of making "threats of future bodily harm." In explaining his ruling, the hearing officer noted that he would have found Rhodes guilty even if Rhodes had called witnesses who testified that he had not made the alleged threats:

> I am going to presume that the witnesses would say exactly what you said they would say, I am taking that into account because it sounds like you could have called witnesses and chose not to so I am going to presume that they would back you up 100 percent, I am still going to find you guilty.

Rhodes was sanctioned with 20 days punitive segregation and 40 days loss of good time.

Rhodes appealed the disciplinary decision to the facility superintendent.[2] The second page of the appeal form stated that a decision from the superintendent was "a final order" that could be appealed to the superior court. It also stated that the inmate "must file a notice of appeal . . . with the Superior Court within 30 days from the date of the [superintendent's] decision."[3]

Rhodes claimed that his hearing advisor had told him he "didn't think [Rhodes] needed witnesses . . . to testify" because "everyone k[new]" the allegations against him were false. He also claimed that the hearing officer had determined Rhodes's guilt prior to the disciplinary hearing because he indicated that he would have found Rhodes guilty regardless of whether a hypothetical witness corroborated

---

**2**     *See* 22 AAC 05.480(e) ("Disciplinary action for a minor, low-moderate, or high-moderate infraction may only be appealed to the superintendent.").

**3**     *See* Alaska R. App. P. 602(a)(2).

Rhodes's testimony. On June 9, 2021, the superintendent rejected those arguments, affirming the disciplinary decision.

Almost one year later, in May 2022, Rhodes filed a complaint in federal court against DOC and a number of correctional officers, contesting the disciplinary decision among several other topics. The federal court dismissed his case without prejudice in October 2022.

In November 2022, almost a year and a half after the superintendent's final order, Rhodes filed a notice of appeal in state court.[4] He also requested that the court accept his late-filed appeal, explaining that he had initially pursued his case in federal court before he was told he needed to pursue it in state court. In filings associated with his administrative appeal, Rhodes reiterated that the anonymous informants had been colluding to get him in trouble, and argued that Mat-Su Pretrial had "hid[den]" the confidential informants by not bringing them to his disciplinary hearing and that the disciplinary tribunal had therefore violated his due process rights. Rhodes also argued that the superintendent was biased against him.[5]

DOC moved to dismiss the appeal. It asserted that Rhodes's appeal was untimely, and that he failed to set forth facts demonstrating any violation of his constitutional rights prejudicing his right to a fair adjudication. Rhodes argued in opposition that his disciplinary hearing was deficient because DOC would not let Rhodes "face [his] accusers in court."

---

**4** We note that Rhodes did not file his appeal in superior court until January 2023, as he first mistakenly filed his appeal in the court of appeals. For purposes of this decision, we treat November as the month Rhodes initiated his administrative appeal in state court.

**5** Rhodes argued that the superintendent was biased against him because he claimed he used the Inmate Handbook from the law library to push for typewriter access when no typewriters were available, and to advocate for his ability to purchase clothing when he was told he was prohibited from doing so.

The superior court granted DOC's motion to dismiss. The court agreed that Rhodes's claims were untimely because he filed his appeal more than a year after the applicable 30-day deadline even after being informed of that deadline. The court also addressed the substance of Rhodes's claims, concluding that Rhodes "failed to allege specific facts establishing a violation of his fundamental constitutional rights that prejudiced his right to a fair adjudication." Rhodes appeals.

## III. STANDARD OF REVIEW

We review a court's ruling on whether to relax the 30-day time limit to file an administrative appeal under Alaska Appellate Rule 602(a)(2) for abuse of discretion.[6]

## IV. DISCUSSION

A court may relax the 30-day deadline to file an administrative appeal under Appellate Rule 602 "where a strict adherence to [it] will work surprise or injustice"[7] and the appellant demonstrates "good cause" for the delay.[8] "When deciding whether to allow a late-filed appeal we must 'balance the right to appellate review, the willfulness and extent of the rules violation, and the possible injustice that might result from dismissal.' "[9]

---

**6** *Manning v. Alaska R.R. Corp.*, 853 P.2d 1120, 1123 (Alaska 1993).

**7** Alaska R. App. P. 521. *But see* Alaska R. App. P. 521(1) (stating superior court "acting as an intermediate appellate court" may not allow "the notice of appeal to be filed more than 60 days late").

**8** *See* Alaska R. App. P. 502(b) (stating appellate court "may in its discretion" extend time period to do an act — such as file an appeal — upon motion from party showing "good cause" for extension). *But see id.* (asserting "this rule does not authorize . . . the superior court acting as an intermediate appellate court" to accept "the filing of a notice of appeal . . . more than 60 days after the expiration of the time specified in" Appellate Rule 602(a)(2)).

**9** *Conitz v. Alaska State Comm'n for Hum. Rts.*, 325 P.3d 501, 506 (Alaska 2014) (quoting *Cook v. Aurora Motors, Inc.*, 503 P.2d 1046, 1049 (Alaska 1972)).

Here the court did not abuse its discretion when it declined to relax the filing deadline because Rhodes failed to demonstrate "good cause for his late filing."[10] Rhodes makes little argument on this point, but appears to assert that he was unable to file his appeal earlier because he was kept on "two-man status" in Mat-Su Pretrial for five or six months following the disciplinary decision. Additionally, during oral argument Rhodes indicated that he spent 20 months in punitive segregation following the disciplinary hearing and suggested that this prevented him from filing suit. Although it is difficult to tell based on the current record what the conditions surrounding Rhodes's incarceration were at any given time, we note that even if Rhodes was completely unable to file appeal paperwork while on "two-man status" for a full five or six months,[11] this would not explain the extent of his delay in pursuing his administrative appeal. Moreover, Rhodes's suggestion during oral argument that his confinement in punitive segregation for 20 months prevented him from filing an administrative appeal is contradicted by his ability to file suit in federal court in May 2022.

Additionally, to the extent that Rhodes meant for his suit in federal court to encompass his administrative appeal, he does not explain how or why he made this

---

[10] *See Katchatag v. Dep't of Corr.*, No. S-17690, 2022 WL 390797, at *2 (Alaska Feb. 9, 2022) (affirming superior court's dismissal of inmate's administrative appeal because inmate filed appeal nine months after 30-day deadline and did not assert or demonstrate "good cause for his late filing"); *see also Shea v. State, Dep't of Admin., Div. of Ret. & Benefits*, 204 P.3d 1023, 1028-29 (Alaska 2009) (stating Appellate Rule 502(b) "requires only a showing of good cause" for extension of deadline to file appeal).

[11] Rhodes appears to contend that he was unable to access a typewriter while he was on "two-man" status, but the record indicates that in response to a Request for Information initiated by Rhodes following the disciplinary hearing, he was informed that he was permitted to "use the keyboard with belly chains on." We need not determine this factual question, however, where the period of time Rhodes asserts that he was on "two-man" status amounted to only a portion of his delay in filing an administrative appeal.

mistake, or how that mistake could support good cause justifying delay, in light of the clear notice that DOC provided Rhodes about his administrative appeal rights. Upon its final disciplinary decision, DOC provided Rhodes a form that explained that the superintendent's decision was a "final order" that could be challenged through an administrative appeal to the superior court. The form also notified Rhodes about how to pursue an administrative appeal and the applicable 30-day deadline for doing so.

Nor did the superior court err when it concluded that DOC would suffer prejudice if it allowed Rhodes's appeal to proceed in spite of his extensive delay in filing.[12] DOC argues — and the superior court agreed — that "[a]ccepting the appeal would set a troubling precedent for the finality of DOC disciplinary decisions." We concur, and note that accepting this late-filed appeal without a reasonable or good cause basis for the delay would render the 30-day filing deadline under Rule 602(a)(2) meaningless.

Given Rhodes's failure to establish good cause for his extensive delay in filing his administrative appeal, and the related prejudice to DOC should the appeal be permitted to move forward, the superior court was well within its discretion to dismiss the appeal on timeliness grounds.[13]

## V. CONCLUSION

For the foregoing reasons, the superior court's order granting DOC's motion to dismiss is AFFIRMED.

---

[12]     *See Conitz*, 325 P.3d at 506 ("We will excuse a late filing when it is the result of reasonable confusion about the state of the law and there is no prejudice to the opposing party.").

[13]     Given that we affirm the superior court's dismissal of Rhodes's appeal on timeliness grounds, we need not address the court's conclusion that Rhodes failed to set forth facts supporting any violation of his constitutional rights related to a fair adjudication. *See Smith's Est. v. State*, 635 P.2d 465, 466-67 (Alaska 1981) (affirming solely on court's rejection of late filing despite appellant's merits claims), *quoted in Katchatag*, 2022 WL 390797, at *1 n.1.